Robert J. JONES

v.

RELIANCE INSURANCE COMPANY,
Appellant.

No. 78–1064.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 5, 1978.

Decided Sept. 28, 1979.

Gary W. Brown, Washington, D. C., with whom Ellen A. Patterson, Arlington, Va., was on the brief, for appellant.

William H. Roberge, Jr., Washington, D. C., for appellee.

Before BAZELON, Senior Circuit Judge, and TAMM and ROBINSON, Circuit Judges.

Opinion for the Court PER CURIAM.

**PER CURIAM:**

Robert J. Jones instituted this litigation against Reliance Insurance Company (Reliance) to recover benefits on an insurance policy providing for payment of $63,000 in the event that Jones failed to receive a flight engineers certificate—an annually renewable testament of physical health required of all flight engineers by the Federal Aviation Administration (FAA) in the interest of air safety.[1]  After an initial mistrial,[2]

Jones won a jury verdict, upon which the District Court entered judgment.[3]  Reliance appeals, complaining of the District Court's refusal to direct a verdict in its favor on grounds that Jones made material misrepresentations in his application for the insurance,[4] that the condition leading to withdrawal of Jones' medical clearance preexisted the policy,[5] and that Jones failed to comply with the policy provision requiring timely notice of a claim of loss.[6]  We affirm.

## I

The evidence at trial, viewed favorably to Jones,[7] revealed the following facts.  Jones worked as a flight engineer for Pan American World Airways for approximately twenty years.  He first came to Dr. Sol Pollack, an FAA-approved physician, for a certifying checkup in 1955,[8] and visited Dr. Pollack almost annually thereafter through 1972.[9]  On the 1969 visit, Dr. Pollack noted a slight irregularity in Jones' heartbeat, a condition he described as "multiple, extra systoles."[10]  Dr. Pollack attributed this irregularity to Jones' anxiety over his recent divorce, but out of an abundance of caution referred Jones to a cardiologist, Dr. Schwartzwald, who came to the same conclusion and so informed Pollack.[11]  Dr. Pollack thereupon concluded that the extra systols were an innocuous and fleeting abnormality and certified Jones fit to fly.[12]  In 1970, Dr. Pollack noticed an occasional extra systol, but found no signs of patholo-

---

1.  Federal jurisdiction is premised on diversity. The parties agree that the law of the District of Columbia should govern the substantive aspects of this litigation.  We abide by this determination.  See *Lee v. Flintkote Co.*, 193 U.S. App.D.C. 121, 124, 126 & n.14, 593 F.2d 1275, 1278–1280 & n.14 (1979).

2.  Supplemental Transcript at 2–4.

3.  *Jones v. Reliance Ins. Co.*, No. 76–173 (D.D.C. Nov. 15, 1977).

4.  Part III *infra*.

5.  Part IV *infra*.

6.  Part V *infra*.

7.  See, *e. g., Galloway v. United States*, 319 U.S. 372, 395, 63 S.Ct. 1077, 1089, 87 L.Ed. 1458, 1473 (1943); *Princemont Const. Corp. v. Smith*, 140 U.S.App.D.C. 111, 114, 433 F.2d 1217, 1220 (1970).

8.  Joint Appendix (J.App.) at 35.

9.  *Id.* at 36.

10.  *Id.* at 37.

11.  *Id.* at 38–39.

12.  *Id.* at 40.

gy.[13] In 1971, Dr. Pollack examined Jones but made no finding specifically referable to his heart and certified him medically qualified.[14] In December, 1972, Dr. Pollack saw Jones for the last time, observed the same irregularity and advised him to see a cardiologist again.[15]

Jones felt no adverse effects from his irregular heartbeat but, apprised of the irregularity at the 1969 FAA examination, he sought out the advice of Dr. Donald J. Cameron, a cardiologist, in September of that year.[16] Though Dr. Cameron noted no extra systols at that examination, he had Jones return in October. Then an irregularity was perceived[17] but, as Dr. Cameron was to testify, "in Mr. Jones the condition was relatively innocuous."[18] Dr. Cameron saw Jones twice in 1970, and both times observed minor irregularities that "can occur in people who have entirely normal hearts."[19] He again saw Jones on December 6, 1972, following Dr. Pollack's renewed suggestion that he consult a cardiologist.[20] Dr. Cameron found Jones' condition unchanged, but recommended that he take inderal if he should feel his heart flutter.[21]

Jones applied for the policy in suit on December 12, 1972, and the policy went into effect on the following February 1.[22] In late January of 1973, Jones was grounded by FAA because inderal had been prescribed.[23] Jones then went back to Dr. Cameron, who took him off the drug, whereupon Jones regained his flight status.[24] In February, 1974, however, Jones failed to receive medical clearance and was grounded.[25] On the advice of an FAA-approved doctor, and in an effort to regain certification, Jones underwent a cardiac catheterization, which revealed "a very minimal degree of a condition called hypertrophic subaortic stenosis"[26]—a condition involving a thickening of part of the left ventrical muscle below the aortic valve. Informed of this finding, the Federal Air Surgeon on February 12, 1975, issued a final denial of Jones' application for medical certification.[27] Jones notified Reliance by letter dated February 25, 1975 of his claim for benefits under the policy.[28]

## II

Reliance moved for a directed verdict at the close of all of the evidence.[29] The District Court denied the motion[30] and submitted the case to the jury, which found for Jones. Reliance did not ask the court to enter judgment notwithstanding the verdict, nor did it move for a new trial, and that severely circumscribes our review.

■ The Supreme Court has more than once held that Rule 50(b) of the Federal Rules of Civil Procedure forbids a court of appeals from directing a verdict in favor of a party who fails to move following trial for judgment *non obstante veredicto*.[31] Appel-

13. *Id.* at 40–41.

14. *Id.* at 41–42.

15. *Id.* at 42–44.

16. *Id.* at 50.

17. *Id.* at 49–50.

18. *Id.* at 50.

19. *Id.* at 52.

20. *Id.* at 53.

21. *Id.* at 58.

22. *Id.* at 109–114.

23. *Id.* at 24–25.

24. *Id.* at 25.

25. *Id.* at 26.

26. *Id.* at 63 (testimony of Dr. Cameron).

27. Letter from H. L. Reighard, M.D., to Robert J. Jones (Feb. 12, 1975), J.App. 116.

28. Letter from Robert J. Jones to Reliance Insurance Company (Feb. 25, 1975), J.App. 115.

29. J.App. at 99–100.

30. *Id.* at 100.

31. *Johnson v. New York, N.H. & H. R.R.,* 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77 (1952); *Globe Liquor Co. v. San Roman,* 332 U.S. 571, 68 S.Ct. 246, 92 L.Ed. 177 (1948); *Cone v. West Va. Pulp & Paper Co.,* 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849 (1947).

**4**

late relief is limited to ordering a new trial and, more importantly, the District Court's refusal to direct a verdict is ground for a new trial only if the record reveals a complete absence of evidence to support a jury's verdict.[32] For reasons now to be stated, that is not the situation here.

### III

Reliance's central claim is that Jones falsely answered two questions in his application for the policy and that accurate responses would have led it to deny Jones the coverage he sought. Had these assertions been unassailably proven [33] by the evidence adduced at the trial, a District of Columbia statute,[34] as authoritatively construed,[35] would have barred Jones' recovery.

Question (5) of the application filled out by Jones asked: "To the best of your knowledge and belief have you ever had or been under observation for any disease or disorder . . . (c) [o]f the heart, blood vessels or for abnormal blood pressure . . . ?" [36] Jones answered this question with a "no." [37]

Question (6) of the application inquired: "To the best of your knowledge and belief have you ever had a surgical operation or been advised to have one which was not performed or consulted a physician in the past five years other than as above, including check-ups?" [38] To this Jones replied, "no—other than FAA and company physicals." [39] Counsel for both parties devote most of their energies to disputing the materiality of these allegedly false statements. We see no need to enter this quarrel, for there was evidence that would suggest that Jones' answers were substantially true.[40]

■ Dr. Cameron characterized Jones' irregular heartbeat as "relatively innocuous" [41] and "functional" rather than "pathological." [42] Thus, there is some factual basis for Jones' negative answer to question 5(c), for the terms "disease" and "disorder" in insurance contracts are construed to mean serious, permanent ailments.[43]

■ We are somewhat more concerned about the veracity of Jones' response to question 6. Jones had seen Dr. Cameron, who was not an FAA or Pan American physician, five times before applying for the policy in question.[44] Yet as both Jones and Dr. Cameron explained, these visits were prompted by the irregularities discovered during the FAA examination.[45] Moreover, Jones consulted Dr. Cameron in an effort to dispel any potential obstacle to certification of his fitness to fly, and not because of "any symptoms that he had ex-

**32.** *Woods v. National Life & Accident Ins. Co.,* 347 F.2d 760, 769 (3d Cir. 1965); *Porter v. Eckert,* 465 F.2d 1307, 1309 (5th Cir. 1972); *Karjala v. Johns-Mansville Prods. Corp.,* 523 F.2d 155, 157 (8th Cir. 1975); *cf. Oliveras v. American Export Isbrandtsen Lines, Inc.,* 431 F.2d 814, 817 (2d Cir. 1970). See also 5A J. Moore, Federal Practice, § 50.12, at 50–108 (2d ed. 1948).

**33.** Reliance has the burden of proof on these matters. *Prudential Ins. Co. v. Saxe,* 77 U.S. App.D.C. 144, 155, 134 F.2d 16, 27, cert. denied, 319 U.S. 745, 63 S.Ct. 1033, 87 L.Ed. 1701 (1943); *Metropolitan Life Ins. Co. v. Adams,* 37 A.2d 345, 348 (D.C.Mun.App.1944).

**34.** D.C.Code § 35–414 (1973).

**35.** *Metropolitan Life Ins. Co. v. Johnson,* 363 A.2d 984, 987 (D.C.App.1976); *Hill v. Prudential Ins. Co.,* 315 A.2d 146, 148 (D.C.App.1974). See *Lee v. Flintkote Co., supra* note 1, 193 U.S.App.D.C. at 124–126 & n.14, 593 F.2d at 1278–1280 & n.14.

**36.** J.App. at 114.

**37.** *Id.*

**38.** *Id.*

**39.** *Id.*

**40.** See *Prudential Ins. Co. v. Saxe, supra* note 33, 77 U.S.App.D.C. at 153, 134 F.2d at 25.

**41.** J.App. at 50.

**42.** *Id.* at 54.

**43.** See *Johnson v. Metropolitan Life Ins. Co.,* 53 N.J. 423, 251 A.2d 257 (1969) (a passing coronary insufficiency deemed not a disease or illness); 7 G. Couch, Cyclopedia of Insurance Law, § 37:147 (2d ed. 1961).

**44.** See notes 16–21 *supra* and accompanying text.

**45.** J.App. at 20, 51, 53, 55.

perienced." [46] Question 6, like question 5, was addressed explicitly to the applicant's knowledge, and we cannot say that there is no evidence that "[t]o the best of [his] knowledge and belief" Jones had not in the past five years consulted a doctor "other than FAA and company officials." [47]

## IV

Reliance also argues that the infirmity resulting in Jones' grounding preexisted the effective date of the policy and thus under the policy was an excluded risk.[48] There is, however, support in the record for the contrary conclusion. Idiopathic hypertrophic subaortic stenosis, the basis for FAA's final denial of a medical certificate to Jones, was not diagnosed until October, 1974.[49] And Dr. Cameron testified that he could not say to a medical certainty that Jones had this disorder when he applied for the policy.[50] Given this appeal's posture, the evidence that Jones had idiopathic hypertrophic subaortic stenosis at the time of the application is not strong enough to warrant the setting aside of the jury's verdict.

## V

Finally, Reliance complains that the District Court erred in submitting to the jury the question of Jones' compliance with the notice-of-loss provision of the policy. This provision required written notice of the claim within "twenty (20) days after the

occurrence or commencement of any loss covered by the Policy, or as soon thereafter as . . . reasonably possible." [51]

Reliance's argument hinges on construction of the term "loss." If loss occurred when Jones was initially grounded, then the notice he gave was untimely. If loss was not occasioned until FAA finally denied Jones flight clearance, then his February 25 letter to Reliance was within the 20-day period. Construction of a contract is for the court only when unambiguous or when extrinsic evidence of the parties' intent is neither conflicting nor disputed.[52] "Loss" was not a term defined in the policy and is not so lucid as to preclude consideration of extra-contractual evidence of intent. And though Reliance took a different view, Jones, mindful that he was once initially grounded only to be reinstated shortly thereafter, testified that he thought that a loss within the meaning of the policy occurs only when a denial of certification is made final.[53] A jury issue was presented.

The judgment appealed from is accordingly

*Affirmed.*

---

**46.** J.App. at 76.

**47.** J.App. at 114. We should not be understood as ruling that innocent material misstatements do not avoid an insurance policy under District of Columbia law. The cases are to the contrary. *E. g., Hill v. Prudential Ins. Co., supra* note 34, 315 A.2d at 148, *Metropolitan Life Ins. Co. v. Adams, supra* note 33, 37 A.2d at 350. Rather, we hold that there was some evidence that Jones' answers to questions 5(c) and 6—addressed as they were to the applicant's understanding—were true. See *Johnson v. Metropolitan Life Ins. Co., supra* note 43.

**48.** Brief for Apellant at 27–31.

**49.** J.App. at 102–103.

**50.** J.App. at 71–72.

**51.** J.App. at 112.

**52.** *Lee v. Flintkote Co., supra* note 1, 193 U.S. App.D.C. at 127, 593 F.2d at 1281; *Clayman v. Goodman Properties, Inc.,* 171 U.S.App.D.C. 88, 96, 518 F.2d 1026, 1034 (1973).

**53.** J.App. at 15, 27–28.