**Guadalupe R. HINOJOSA,
Plaintiff-Appellee,**

v.

**The CITY OF TERRELL, TEXAS, et
al., Defendants,**

**Ron Jones, Etc., Defendant-Appellant.**

No. 86–1777.

United States Court of Appeals,
Fifth Circuit.

Jan. 6, 1988.

---

**37.** 619 F.2d at 404.

**38.** 759 F.2d 412 (5th Cir.1985).

**39.** *Crane,* 759 F.2d at 430 n. 19.

**40.** *See Carbalan,* 760 F.2d at 664.

George C. Dunlap and David G. McCracken, Strasburger & Price, Dallas, Tex., for defendant-appellant.

Frank P. Hernandez, Hernandez, Inc., Dallas, Tex., for plaintiff-appellee.

Before RANDALL, WILLIAMS, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellee Guadalupe Hinojosa (Hinojosa) sued the City of Terrell and four of its police officers, alleging civil rights violations pursuant to 42 U.S.C. §§ 1981, 1983, 1985 & 1986, and several pendent state law claims. The district court entered judgment on a jury verdict finding that defendant-appellant police officer Ron Jones had used excessive force against Hinojosa "in the course of an arrest" and that he had assaulted Hinojosa, and denied Jones' post-verdict motions seeking judgment notwithstanding the verdict or a new trial. Jones appeals from the court's post-trial rulings. Finding no evidence to support the jury verdict in favor of Hinojosa, we reverse the district court's denial of Jones' motion for a new trial, and remand for a new trial on Hinojosa's excessive use of force claim under section 1983, and on his state law assault claim, against Jones.

### Facts and Proceedings Below

At the time of the events that provoked this suit, Guadalupe Hinojosa operated a pool hall in Terrell, Texas. Just after mid-

night on January 17, 1982, Hinojosa, then forty-nine years old, and his wife received a telephone call at home from the night manager of the pool hall. The manager informed Mrs. Hinojosa that two of the patrons at the pool hall were arguing and that she had called the police. Mrs. Hinojosa related this information to her husband, who then drove immediately to the pool hall.

According to Hinojosa, when he arrived two police officers had arrested two persons and were escorting the arrestees into the police cars. There were fifteen to twenty Mexican-Americans or Mexican nationals milling about inside and outside of the pool hall. Hinojosa told the night manager to close the pool hall for the night and helped her usher the patrons out.

Unknown to Hinojosa, the two arrestees had been fist fighting on the sidewalk before Hinojosa arrived. When the pool hall night manager called for police assistance, the police dispatcher notified Officer Delacerda, in whose district the pool hall was located. Defendant Delacerda, who was the first officer to arrive, arrested the two men who were fighting. They offered no resistance. In the meantime, Officer Jones drove up and began ordering the crowd to disburse. He also assisted Delacerda in placing one of the arrestees in his patrol car.

What happened next is the subject of much dispute between the parties. According to Hinojosa, he was standing at the door of the pool hall talking to Rubin Reyes, Sr. (Reyes, Sr.) (a patron standing outside), when Delacerda ran up to Reyes, Sr. and for no apparent reason hit him on the head with his flashlight. Reyes, Sr. fell to the ground. Delacerda hit Reyes, Sr. again, and tried to handcuff him. Delacerda "was on the ground with Reyes, Sr." Hinojosa told Delacerda "not to hit him [Reyes, Sr.] any more." At that point, Officer Jones walked up to Hinojosa, drew his service revolver, and pointed it directly at Hinojosa. Hinojosa testified that by then he had moved back from Reyes, Sr. and was several feet away from Delacerda

and Reyes, Sr., but only about one foot away from Jones.

Hinojosa insists that Officer Jones did not speak to him at all, either before, during, or after Jones pointed the gun at him. Hinojosa's position about what he said to Jones is less clear. Although at one point in his testimony Hinojosa said that he did not speak at all to Officer Jones, he later testified that when Jones pointed the gun, he said "I haven't done nothing." Hinojosa also testified that before Jones drew his gun, he told "the police who were beating [Reyes, Sr.]" that "[t]he big people from Dallas are coming down here and find out the truth" or "that the boys from Dallas were going to take care of them."

Hinojosa testified that while Jones' gun was pointed at him, he initially stood still, then slowly "turned around real easy [and] went towards the pool hall." He went inside the pool hall. From inside the pool hall, looking out its door, Hinojosa saw another police officer (Moore) at the sidewalk pointing his gun to the head of Reyes' son, Rubin Reyes, Jr. (Reyes, Jr.). Then he also saw Officer Blair (whom he knew by name) drive up. Jones told Blair to "get Lupe [Hinojosa]." Blair then came to the pool hall door and called to Hinojosa, who was inside, to "come here." Hinojosa did so, and Blair then told Hinojosa he was under arrest. No force was used in the arrest and Hinojosa was not handcuffed. He was taken to the police station. He testified that no one used "any force" on him that evening.

The police officers' version of these events is predictably different. According to Jones, when Delacerda attempted to arrest Reyes, Sr., the man resisted violently, prompting Delacerda to strike him in self defense. While Delacerda and Reyes, Sr. struggled, a second man (Reyes, Jr.) hit Delacerda on the head with his fist. Jones grabbed Reyes, Jr. and handed him over to Officer Moore, who had just arrived. Moore took Reyes, Jr. away and Jones then assisted Delacerda in subduing the still-fighting Reyes, Sr. Jones threw Reyes, Sr. to the ground and went to the ground with him. As they continued struggling, a small

crowd moved in, and Hinojosa grabbed Jones' arm and tried to pull him off Reyes, Sr. Jones repeatedly ordered Hinojosa to "get back, get away," but Hinojosa stayed.

According to both Jones and Delacerda, Hinojosa was excited and threatened the officers several times. Jones remembered Hinojosa yelling, "Your wife is going to suffer like this. The boys from Dallas are going to be down. They will take care of you. He said you're going to die. You're going to die, mother f____." Jones, who said he then feared for his life, drew his gun, pointed it at Hinojosa, and again commanded Hinojosa to "get back." Jones claimed that Hinojosa remained steadfast even then, until Officer Blair arrived a few seconds later. Then, testified Jones, Hinojosa turned and ran into the pool hall, and was thereafter placed under arrest by Officer Blair.

The parties agreed that Hinojosa did not resist his arrest, and that no force was used against him either during his arrest or later at the police station. Hinojosa testified that at no point did any of the officers ever touch him. Hinojosa also acknowledged that he suffered no physical injury from the incident, but said that "it bother[ed] me that I haven't done nothing." [1]

He testified that as a result, he couldn't work for about three to four weeks and that he was embarrassed before his children and wife because he had been arrested.[2]

As a consequence of these events, on January 17, 1984, Hinojosa commenced the present action against the City of Terrell, its then-Chief of Police Joe Patton, and police officers Blair, Delacerda, Jones, and Moore. In the complaint he alleged causes of action under 42 U.S.C. §§ 1981, 1983, 1985, & 1986 for violation of his rights under the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution. He also asserted pendent state law claims for assault, battery, false arrest, false imprisonment, intentional infliction of emotional distress, malicious prosecution, and negligence. For these alleged wrongs, Hinojosa sought actual and punitive damages, attorneys' fees, and costs from all of the defendants.

In response to a motion for partial summary judgment submitted by the defendants, the district court on May 20, 1986, dismissed Hinojosa's claims pursuant to 42 U.S.C. §§ 1981, 1985, & 1986, and all of his claims against Officer Moore.[3] Thereafter,

---

**1.** On cross-examination, Hinojosa (who was not called as a direct witness by his own counsel) gave the following testimony about his "injuries":

"Q. How did it bother you to be arrested on the night of June 17th, 1982?
" . . . .
"A. Well, it did bother me, yes, sir.
"Q. How did it bother you?
"A. Well, it bother me that I haven't done nothing.
"Q. Did it cause you to do anything different in your life?
"A. Well, it bothers me because it's just not the same thing.
"Q. How did it bother you, what did you do, how did it change your life?
"A. Well, it didn't change my life, but it changed that I just want to know to do what is right.
"Q. Did it cause you to lose any money?
"A. Well, I guess that's what you call it when you lose time.
"Q. What kind of time did you lose?
"A. I couldn't operate my work. I'd get a wrench and I'd go to thinking about what happened and why did it happen.
" . . . .

"A. I didn't feel good if [my] family looked at, you know, what was thought I had done.
"Q. Your family thought you did that?
"A. No they didn't thought, but you don't feel the same."

**2.** Upon his arrest, Hinojosa was initially charged with public intoxication, resisting arrest, and making terroristic threats. Apparently, all of the charges except resisting arrest were later dropped. On March 22, 1982, Hinojosa was tried before a jury and found not guilty of the charge of resisting arrest.

**3.** The district court further ruled as a matter of law that Hinojosa could not recover punitive damages against the City of Terrell. In the partial summary judgment motion, the defendants also asserted that the malicious prosecution claim should be dismissed because it was barred by the statute of limitations, that all of the state law claims had to be dismissed because Hinojosa failed to give the city written notice of these claims, as required by a city ordinance, and that Tex. [Tax] Code Ann. § 191.064(a) (Vernon 1981) foreclosed Hinojosa's claim against the City for closing the pool hall. Despite Hinojosa's failure to file any response to the defend-

on June 10, 1986, the case proceeded to trial. At the close of Hinojosa's evidence, and after all of the evidence was presented, various defendants made motions for a directed verdict with respect to several of Hinojosa's claims, which the district court granted in part. The remaining claims were submitted to the jury by special interrogatories. These included:

(1) excessive use of force by Jones, Delacerda, and Blair (in violation of 42 U.S.C. § 1983),

(2) illegal arrest by Jones, Delacerda, and Blair (in violation of 42 U.S.C. § 1983),

(3) conspiracy to use excessive force or perform illegal arrest by Jones, Delacerda, and Blair (in violation of 42 U.S.C. 1985),[4]

(4) assault by Jones,

(5) intentional infliction of emotional distress by Jones, Delacerda, and Blair,

(6) false arrest and imprisonment by Jones and Blair,

(7) intentional interference with Hinojosa's business by Delacerda, and

(8) negligent hiring of Jones by Chief Patton.

In addition, the district court instructed and submitted interrogatories to the jury on damages, and on the defenses of good faith immunity and discretionary authority.

The jury found that officer Jones had used excessive force "against" Hinojosa "in the course of an arrest,", that he had "committed an assault on" Hinojosa, that his actions were not undertaken pursuant to the exercise of his discretionary authority, and that he had not acted with a reasonable, good faith belief that his actions were proper. The jury found, however, that Jones had not "intentionally committed an act, or threatened to commit an act, against" Hinojosa "with the purpose of causing Hinojosa emotional distress." It also determined that neither Jones nor any other officer inquired about "arrested" Hinojosa "without probable cause," or "falsely arrested or imprisoned" him, so as to proximately cause him any damage; that there was no conspiracy "to illegally arrest or use excessive force against" Hinojosa; and that the Chief of Police was not negligent in hiring or retaining Jones. And in all other respects, the jury likewise found in favor of each of the defendants. In response to the damages interrogatories, the jury found "none" regarding "illegal arrest, or ... false arrest or false imprisonment, if any"; "none" regarding "the intentional infliction of emotional distress ..., if any"; "none" regarding negligent hiring or retention of Jones, if any; $2,000 "resulting from the use of excessive force or assault against" Hinojosa; and $2,000 punitive damages against Jones only.[5]

Subsequently, on September 4, 1986, the district court entered judgment. In accordance with the jury's verdict, the court awarded Hinojosa $2,000 in actual damages and $2,000 in punitive damages against Jones for use of excessive force and assault. Pursuant to 42 U.S.C. § 1988, the court also awarded Hinojosa $12,487.50 in attorneys' fees against Jones.

## Discussion

Jones argues on appeal that there is no evidence or, alternatively, insufficient evidence to support the jury verdict against him, either with respect to Hinojosa's section 1983 use of excessive force claim or his Texas common-law assault claim. Therefore, Jones contends, the district court erred in denying his motions for judgment notwithstanding the verdict and for a new trial.

### Standard of Review

According to Rule 50(b) of the Federal Rules of Civil Procedure, a party may

---

ants' summary judgment motion, the district court denied these portions of the motion.

**4.** This claim was submitted to the jury even though it had previously been dismissed by the district court pursuant to the defendants' motion for partial summary judgment.

**5.** The jury also awarded $1,000 for interference with Hinojosa's business, but the district court disallowed this item of damages apparently because the jury had found that officer Delacerda (the only officer inquired about in this connection) had *not* intentionally interfered with the business.

only base a motion for judgment notwithstanding the verdict on a ground that he included in a prior motion for directed verdict at the close of all the evidence. *See* Fed.R.Civ.P. 50(b); *Jones v. Benefit Trust Life Ins. Co.*, 800 F.2d 1397, 1401 (5th Cir.1986) (citing *Sulmeyer v. Coca Cola Co.*, 515 F.2d 835 (5th Cir.1975), *cert. denied*, 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed. 2d 341 (1976)). This rule has been liberally construed, however, to in certain circumstances permit the granting of a motion for judgment notwithstanding the verdict where a motion for directed verdict was made at the close of the plaintiff's case but was not renewed at the close of all the evidence, *Merwine v. Board of Trustees*, 754 F.2d 631, 634–35 (5th Cir.), *cert. denied*, 474 U.S. 823, 106 S.Ct. 76, 88 L.Ed.2d 62 (1985); *Bohrer v. Hanes Corp.*, 715 F.2d 213 (5th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984), or where the moving party objected to the court's jury instructions on grounds that there was no evidence to support a claim but failed to move for a directed verdict on that claim. *Jones*, 800 F.2d at 1401; *see also* 9 C. Wright & A. Miller, *Federal Practice & Procedure* § 2537 (1971 & Supp.1986). As we have recently emphasized, Rule 50(b), and its judicial gloss, serve the dual purposes of

> "enabl[ing] the trial court to re-examine the question of evidentiary insufficiency as a matter of law if the jury returns a verdict contrary to the movant, *and to alert the opposing party to the insufficiency before the case is submitted to the jury,* thereby affording it an opportunity to cure any defects in proof should the motion have merit." *Merwine*, 754 F.2d at 634 (emphasis added).

■ In this case Jones did not at any time move for a directed verdict in his favor with respect to either the excessive use of force claim or the assault claim, nor did he object to the submission of any of the interrogatories pertaining to these claims on the ground that the claims were unsupported by the evidence. On the record before us, therefore, it appears that Jones failed to alert Hinojosa, prior to submission of the case to the jury, to the possibility that insufficient evidence was presented to support the use of excessive force and assault claims. Consequently, we conclude that Jones' motion for judgment notwithstanding the verdict on these claims lacked a proper predicate. *Sandoz v. Merchants Trust & Savings Bank (In re Owners of "Harvey Oil Center")*, 788 F.2d 275, 278 (5th Cir.1986).

Since Jones did not move for directed verdict, our review of the district court's denial of his motions for judgment notwithstanding the verdict and for a new trial (on insufficiency of the evidence grounds)[6] is extremely limited. In such cases, "our inquiry is restricted to whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in manifest miscarriage of justice." *Stewart v. Thigpen*, 730 F.2d 1002, 1007 (5th Cir.1984) (emphasis in original); *accord Sandoz*, 788 F.2d at 278; *Bunch v. Walter*, 673 F.2d 127, 130 (5th Cir.1982); *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 297 (5th Cir.1978). If so, we must affirm the district court's entry of judgment in accordance with the jury verdict; if not, appellate relief is limited to ordering a new trial. *Gorsalitz v. Olin Mathieson Chemical Corp.*, 429 F.2d 1033, 1038 (5th Cir.1970); *Jones v. Reliance Ins. Co.*, 607 F.2d 1, 3–4 (D.C.Cir.1979); 9 C. Wright & A. Miller, *supra*, § 2539. *Cf. Johnson v. New York, N.H. & H.R. Co.*, 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77 (1952).

We now separately consider the use of excessive force claim and the state law assault claim in light of this standard.

## Use of Excessive Force

In section 1983 actions alleging use of excessive force by state officials in viola-

---

**6.** As Judge Brown has noted, technically our inquiry with respect to the motion for judgment notwithstanding the verdict is distinct from that regarding the new trial motion. *Bunch v. Walter*, 673 F.2d 127, 130–31 n. 4 (5th Cir.1982). Where, as here, however, the only issue raised in the new trial motion is sufficiency of the evidence to support the verdict and no motion for directed verdict was made, the two separate standards of review merge. *Id.*

tion of Fourteenth Amendment rights, this Circuit follows the standard first set forth in *Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir.1981). *Accord Lynch v. Cannatella,* 810 F.2d 1363, 1375 (5th Cir.1987); *Hinshaw v. Doffer,* 785 F.2d 1260, 1267 (5th Cir.1986); *Hendrix v. Matlock,* 782 F.2d 1273, 1274 (5th Cir.1986). That standard was recently reiterated in *Coon v. Ledbetter,* 780 F.2d 1158, 1163 (5th Cir. 1986), where a panel of this Court stated:

"In determining whether the state officer has crossed the constitutional line that would make the physical abuse actionable under Section 1983, we must inquire into the amount of force used in relationship to the need presented, the extent of the injury inflicted and the motives of the state officer. If the state officer's action caused severe injuries, was grossly disproportionate to the need for action under the circumstances, and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under Section 1983."

The district court in this case faithfully adhered to this standard in instructing the jury on Hinojosa's use of excessive force claim. Neither Jones nor Hinojosa objected, either in the district court (so far as the record reflects) or on appeal, to the use of this standard or to the court's statement of it in the jury charge.[7] Jones does argue, however, that Hinojosa produced no evidence that would support a jury verdict in his favor under the *Shillingford* criteria. After a careful review of the record, we must agree.

As the Supreme Court has repeatedly emphasized, "[s]ection 1983 imposes liability for violations of rights protected by the *Constitution,* not for violations of duties of care arising out of tort law," *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979) (emphasis added). Not every injury for which a state official is responsible is actionable under section 1983. *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980); *accord Mark v. Caldwell,* 754 F.2d 1260, 1261 (5th Cir.), *cert. denied,* 474 U.S. 945, 106 S.Ct. 310, 88 L.Ed.2d 287 (1985) ("section 1983 does not grant a cause of action for every injury wrongfully inflicted by a state officer"); *Shillingford,* 634 F.2d at 264 (same). In recognition of this need to distinguish potential constitutional violations from mere breaches of state tort law, *Shillingford* limits redress under section 1983 to police conduct that (1) caused at least meaningful injury, (2) was grossly disproportionate to the need presented, and (3) was motivated by malice. Even applying, as we must, the "Draconian" standard of whether *any* evidence was presented to support a jury finding that these criteria were met, *see Scheib v. Williams-McWilliams Co.,* 628 F.2d 509, 512 (5th Cir.1980), we cannot uphold the jury verdict against Jones for constitutionally excessive use of force.

In the first place, Hinojosa's injury, which can only be characterized as temporary emotional distress, simply does not rise to a level that can be redressed for such a claim under section 1983. *See Lynch,* 810 F.2d at 1375–76; *Gumz v. Morrissette,* 772 F.2d 1395, 1400–02 (7th Cir. 1985), *cert. denied,* 475 U.S. 1123, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986); *Mark v. Cald-*

---

**7.** The jury was instructed and this case was tried on the theory that the applicable standard of law in respect to the section 1983 excessive force claim is that enunciated in *Shillingford.* The arguments of both parties on appeal also assume that the *Shillingford* standard governs. We note that the Supreme Court recently stated a slightly different standard in analyzing a *Fourth* Amendment challenge to a state statute construed to authorize the employment of deadly force to effectuate an arrest. *See Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985) (balance nature and quality of

intrusion against the governmental interests to determine objective reasonableness or excessiveness of force used); *see also Gumz v. Morrissette,* 772 F.2d 1395, 1404–09 (7th Cir.1985) (Easterbrook, J., concurring), *cert. denied,* 475 U.S. 1123, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986). Unlike in the present case, however, in *Garner* the alleged use of excessive force was clearly to effectuate the arrest of the plaintiff. While Hinojosa was arrested, there was no evidence that Jones' pointing of his gun was done to effectuate Hinojosa's subsequent arrest.

*well*, 754 F.2d at 1261. There is absolutely no evidence, and neither Hinojosa nor any of the police officers testified, that Hinojosa was struck, or even touched, during the incident. Hinojosa did not claim to have suffered even minor physical injuries or intrusion. He sought no medical attention. Hinojosa did say that having the gun pointed at him made him scared, and that the January 17, 1982, incident had made him unable to work for a few weeks. But, except as to the momentary fear he experienced while the gun was pointed at him, Hinojosa's testimony reflected that his emotional distress (embarrassment and inability to concentrate on his work) was essentially due to having been subsequently *arrested*.[8] Thus, even stretching the testimony as far as possible in a light most favorable to Hinojosa, the only harm occasioned by Jones' pointing his gun was the understandable immediate emotional distress of Hinojosa at being the target of the gun point. *Cf. Gumz*, 772 F.2d at 1401.

This Court does not here determine whether or not some type of physical injury will in *every* instance be necessary for section 1983 liability in a use of excessive force claim. *See Gumz*, 772 F.2d at 1401; *cf. Black v. Stephens*, 662 F.2d 181, 189 (3d Cir.1981).[9] But, as the Seventh Circuit recently noted, "the ultimate question here is, after all, whether the use of force was so egregious as to be constitutionally excessive, and the presence of some physical injury is certainly relevant to that determination." *Gumz*, 772 F.2d at 1401. *See McFadden v. Lucas*, 713 F.2d 143, 145–47

(5th Cir.1983) ("an intimidating show of force" by "twenty-two officers armed with sticks and threatening demeanor," though arguably "excessive," did not state a claim where no actual physical harm was inflicted). *See also United States v. Bigham*, 812 F.2d 943, 949 (5th Cir.1987) (severity of injury "tends to prove degree of force and the existence or absence of its justification").

Application of *Shillingford*'s second factor to the ˙circumstances of this case further buttresses our conclusion that there was no evidence to support a jury finding in favor of Hinojosa on this section 1983 claim. Our review of the record fails to reveal *any* evidence that Jones' mere pointing of the gun was grossly disproportionate to the need for action under the circumstances. It is undisputed that a large number of the pool hall's patrons remained in the vicinity and that Officer Delacerda was on the ground engaged in a physical altercation of some kind with Reyes, Sr. Hinojosa told Delacerda to stop hitting Reyes and made threats to the officers about getting "people from Dallas" down. It was late at night. One fight had already been broken up and two men had been arrested. Jones and the other officers were in uniform and on duty; they came to the pool hall in response to the night manager's call for help. Hinojosa was aware of all these facts. Even assuming, as Hinojosa claims, that he made no specific threat to Jones and Jones said nothing to him, we are unwilling to say

---

**8.** *See* Hinojosa's trial testimony, note 1, *supra*. The jury found that Hinojosa's arrest was lawful under both section 1983 and Texas tort law. Although the excessive force interrogatory asked if such force was used "against" Hinojosa "in the course of an arrest," the words "an arrest" do not necessarily refer to Hinojosa's arrest, but could refer to that of Reyes, Sr. In any event, there is no evidence that Jones' pointing of his gun was a part of Hinojosa's actual arrest. Jones' liability for use of excessive force in pointing the gun cannot be premised on any emotional distress (or other injury) suffered by Hinojosa as a result of his arrest, which occurred subsequently.

**9.** By not discussing whether the plaintiff had suffered any bodily injury, the Third Circuit in *Black* suggested that an unprovoked police offi-

cer who pointed his gun in the plaintiff's face and threatened to shoot could be liable under section 1983 for use of excessive force that caused only emotional distress to the plaintiff. *Black* differs somewhat from this case, however, because when the defendant police officer pointed the gun, he was in "plain clothes" and had not identified himself as a policeman. 662 F.2d at 185. In any event, we find the holding in *Black* unpersuasive. The court gave no reasoning for affirming the jury verdict imposing section 1983 liability, nor did it cite any authority for its implicit conclusion that a display of force by a policeman in the course of his duties (as opposed to the actual use of force) could constitute a constitutional violation actionable under section 1983.

that merely pointing the gun was grossly disproportionate to the need for action under these circumstances.[10]

*Assault*

█ We also conclude that Hinojosa has failed to present any evidence that Jones committed an assault against him under Texas law. According to Texas law, "a person commits an assault if he intentionally or knowingly threatens another with imminent bodily injury." *Vietnamese Fishermen's Ass'n v. Knights of the Ku Klux Klan*, 518 F.Supp. 993 (S.D.Tex.1981) (citing Tex. Penal Code Ann. § 22.01). Of course, activity that would otherwise subject a person to liability in tort for assault does not constitute tortious conduct if the actor is "privileged" to engage in that conduct. *See generally Restatement (Second) of Torts* 10; W. Keeton, *Prosser and Keeton on Torts* 16 (5th ed. 1984).[11]

Unquestionably, under Texas law a police officer is authorized to *carry* a gun on his person at all times. Tex.Penal Code Ann. § 46.03 (Vernon Supp.1987). Although limited to "necessary" situations, a police officer is also privileged even to *use* actual force against a person in the performance of his duties as an officer. *Id.* §§ 9.21–9.22, 9.51–9.52. In addition, our research revealed nothing in Texas law that in any way circumscribes a police officer's ability, in the course of duty, to make a conditional threat to use actual force if necessary by pointing a gun at someone.

While we have found no Texas statute or decision that has distinguished between the use of force (*e.g.*, firing a gun) and the display of force employed as a conditional threat to use actual force *if necessary*, we believe that an important distinction does exist between the two. *See Jackson v. District of Columbia*, 412 A.2d 948, 955–56 (D.C.Ct.App.1980) (drawing precisely this distinction in a damages action against a police officer for drawing and pointing his gun at the plaintiff). One reason we see for such a distinction is that it may actually have the effect of decreasing violence. By giving a police officer the ability to pull out and point a service revolver at someone without risking tort liability, he may be able to abort a potentially violent situation. Conversely, to subject such displays of force to second guessing by a jury may increase the likelihood that the officer will wait until the situation escalates further before drawing his gun, and thereby end up having to (or believing he has to) shoot to protect himself or others.

Given our firm belief in the soundness of distinguishing between the use, or attempted use, of actual force and a display of force that only conditionally threatens actual force, we are unwilling to create Texas law[12] that makes the latter an illegal assault when done by a police officer in the course of duty "on the line."[13] That is the situation here. It is undisputed that Jones pulled and pointed his revolver in the

**10.** We note that there is a distinction between the display of force, coupled with the conditional threat to actually use force if it becomes necessary, and the present use or attempted use of force. *See Gumz*, 772 F.2d at 1401. In drawing his revolver and pointing it at Hinojosa, Jones did only the former. The revolver's safety was on and there is no evidence the weapon was cocked. Jones never did fire the revolver. There is no evidence that his not doing so resulted either from any external constraint or any change of mind on his part. We are unable to say that there is any evidence that Jones made an attempt, or anything more than a conditional threat, to use the weapon.

**11.** As Professor Keeton explains, "privilege" defeats tort liability because
"it signifies that the defendant has acted to further an interest of such social importance that it is entitled to protection, even at the expense of damage to the plaintiff. The defendant is allowed freedom of action because

his own interests, or those of the public, require it, and because social policy will best be served by permitting it." *Prosser and Keeton on Torts* 16, at 109.

**12.** Judge Posner has recently advised that "[a] party who wants a court to adopt an innovative rule of state law should litigate in state rather than federal court.... Federal judges are disinclined to make departures in areas of law that we have no responsibility for developing." *Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1370 (7th Cir.1985). We echo that sentiment.

**13.** In reaching this conclusion, we do not speak to the situation where the person at whom the gun is pointed is obviously entirely incapacitated (or where the police officer is otherwise clearly in complete control) and it is beyond question that the total situation is and will remain wholly stable and controlled.

course of his official duties; he was in the process of arresting Reyes, Sr. when he pointed it at Hinojosa. Hindsight may afford a basis for concluding that there was no necessity to thus point the gun and that Jones acted unreasonably, and may have been braggadocious, in doing so. However, there is no evidence that Jones either intended or attempted to fire the weapon or to cause Hinojosa any physical injury, and the jury found that he did *not* intend to cause Hinojosa emotional distress. And, of course, Hinojosa suffered no physical injury or intrusion. Consequently, since the evidence, viewed as favorably as possible to Hinojosa, places Jones' actions squarely in the category of an officer's display, in the course of official duty, of force unaccompanied by use, or attempted use, of actual force, we conclude that the jury verdict against Jones for assault cannot stand.

### Conclusion

Because we conclude that there was no evidence to support the jury verdict against Jones, either for use of excessive force under section 1983 or for assault under Texas law, we REVERSE the district court's denial of Jones' motion for new trial, and REMAND for a new trial on these two claims against Jones.

REVERSED and REMANDED.