**Rene GARZA and Jaime Sosa, Plaintiffs,**

v.

**UNITED STATES of America, A.W. De Leon, J. Rangel and Four or More Unknown Agents of the United States Border Patrol, all as Individuals and in Their Official Capacities, Defendants.**

Civ. A. No. L–93–17.

United States District Court,
S.D. Texas,
Laredo Division.

April 4, 1995.

Robert F. Greenblum, Lawyers' Committee for Civ. Rights, Immigrant and Refugee Rights, Mary A. Kenney, Lawyers Committee for Civ. Rights, San Antonio, TX, for plaintiffs Rene Garza, Jaime Sosa.

Howard E. Rose, U.S. Attys. Office, Houston, TX, for defendants U.S., A.W. De Leon, J. Rangel, Five or More Unknown Agents of the U.S. Border Patrol, all as Individuals and in their Official Capacities.

### MEMORANDUM AND ORDER

KAZEN, District Judge.

Pending is the defendant officers' motion for summary judgment on Plaintiffs' claim for violation of their Equal Protection rights. Also pending is Defendant United States of America's motion for summary judgment on Plaintiffs' claims under the Federal Tort Claims Act ("FTCA") for false arrest, false imprisonment, assault, and intentional infliction of emotional distress, negligent infliction

of emotional distress, and negligence.[1]

### 1. *Equal Protection Claim Against Officers.*

In its January 18, 1995 order, the Court stated that nothing in the record supports Plaintiffs' Equal Protection claim, but nevertheless allowed Plaintiffs until February 3, 1995 to submit evidence supporting this claim. The Plaintiffs have failed to do so, and the Court now GRANTS Defendants motion for summary judgment on this claim.

### 2. *Federal Tort Claims Act.*

Under the FTCA, the United States is liable for the negligence of its employees "in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674 (1982). In making this determination, the Court must look to the law of the state "where the act or omission occurred." 28 U.S.C. § 1346(b) (1982). Texas law, therefore, governs the United States' liability in this case.

In cases such as this one, where the federal employee is a law enforcement officer without a private analogue, the courts have abandoned the "private individual" analogy under § 1346(b) and looked to the liability of government employers under state law. *Crider v. United States*, 885 F.2d 294, 296 (5th Cir.1989), *cert. denied*, 495 U.S. 956, 110 S.Ct. 2561, 109 L.Ed.2d 743 (1990); *Hetzel v. United States*, 43 F.3d 1500 (D.C.Cir.1995); *Montes v. United States*, 37 F.3d 1347, 1351 (9th Cir.1994); *Aguilar v. United States*, 920 F.2d 1475, 1477 (9th Cir.1990); *Doggett v. United States*, 875 F.2d 684, 689 (9th Cir. 1989); *Wright v. United States*, 719 F.2d 1032, 1034–35 (9th Cir.1983).

These courts reason that "[q]uestions as to the power and authority to arrest, to maintain custody, and to lawfully restrict a person's liberty, are unique to the law enforcement function. Because private persons do not wield such police powers, the inquiry into the Government's liability in this situation must include an examination of the liability of state and municipal entities under like circumstances." *Louie v. United States*, 776 F.2d 819, 825 (9th Cir.1989).

From this premise, the Government contends that the incorporation of state law under § 1346(b) permits it to invoke the doctrine of official immunity available to state law enforcement officers under Texas law. *See, e.g., Copeland v. Boone*, 866 S.W.2d 55, 57 (Tex.App.—San Antonio 1994, no writ) (holding that state law enforcement officers entitled to official immunity for discretionary acts performed in good faith and in the scope of their employment). Two courts from the Western District of Texas recently held that the United States may avail itself of this doctrine, *McElroy v. United States*, 861 F.Supp. 585, 594 (W.D.Tex.1994) and *Hawkins v. United States*, EP–CA–93–193–H (W.D.Tex. Nov. 29, 1994), but neither provides any authority for this conclusion.[2]

Plaintiffs direct the Court's attention to a line of cases that calls into question the holdings in *McElroy* and *Hawkins*. The same courts that abandon the private individual analogy under § 2674 when the federal actor is a law enforcement officer also refuse to permit the United States to shield itself from FTCA liability by relying on state rules of sovereign or official immunity. *E.g., Crider*, 885 F.2d at 296; *Hetzel*, 43 F.3d 1500; *Wright*, 719 F.2d at 1034–35.

These courts rely principally on the Supreme Court's decisions in *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), and *United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). In *Indian Towing Co.*, the Court held the United States liable under the FTCA for damages resulting from the Coast Guard's negligent operation of a lighthouse on Chandeleur Island, even though

---

1. For a discussion of the facts of this case and the Court's disposition of Plaintiffs' other claims, see the Court's memorandum and order dated January 18, 1995.

2. The *McElroy* court lamented that "[t]here is a dearth of case law in this area because, in most cases, police officers are sued individually as *Bivens* defendants, under federal law." 861 F.Supp. at 594 n. 18. Indeed, the Fifth Circuit identified this "official immunity" issue in *Sutton v. United States*, 819 F.2d 1289, 1300 n. 21 (5th Cir.1987), but declined to resolve it because it had not been briefed.

Louisiana law immunized municipalities under the circumstances. The Court reasoned that it should not "as a self-constituted guardian of the Treasury import immunity back into a statute designed to limit it." 350 U.S. at 64, 76 S.Ct. at 124–25.

*Indian Towing Co.* formed the basis for the Court's holding in *Muniz* that federal prisoners can sue the United States under the FTCA, despite the official immunity that some states grant their jailers. 374 U.S. at 164, 83 S.Ct. at 1859.

> Just as we refused to "import the casuistries of municipal liability for torts" in *Indian Towing,* we think it improper to limit suits by federal prisoners because of restrictive state rules of immunity. Whether a discretionary function is involved is a matter to be decided under 28 U.S.C. § 2680(a), rather than under state rules relating to political, judicial, quasi-judicial and ministerial functions.

*Id.*[3] Thus, the Texas doctrine of official immunity for law enforcement officers will not shield the United States from liability in this case.

While the United States cannot raise the state doctrines of sovereign or official immunity, the courts have held that the United States may nonetheless invoke privileges available to state law enforcement officers. *See Arnsberg v. United States,* 757 F.2d 971, 979–80 (9th Cir.1985) (Government may invoke state-law privilege for law enforcement officers making arrests pursuant to warrant that is regular in form and issued by a court with jurisdiction), *cert. denied,* 475 U.S. 1010, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986); *Caban v. United States,* 728 F.2d 68, 73 (2d Cir. 1983) (INS officer's detention of person entering country privileged under New York law).

■ The distinction turns on the qualitative difference between an immunity and a privilege. Unlike an immunity, which affects liability but "does not diminish the tort,"

*Norton v. United States,* 581 F.2d 390, 397 (4th Cir.) (Butzner, J., dissenting), *cert. denied,* 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 678 (1978), a privilege protects the actor from a finding of tortious conduct, *see Hinojosa v. City of Terrell,* 834 F.2d 1223, 1231 (5th Cir.1988) (activity that would otherwise subject a person to liability in tort does not constitute tortious conduct if actor is privileged to engage in that conduct), *cert. denied,* 493 U.S. 822, 110 S.Ct. 80, 107 L.Ed.2d 46 (1989); Restatement (Second) of Torts § 10 cmt. a ("existence of a privilege ... prevents an act or omission which otherwise would be tortious from being so").

■ Put another way, an immunity insulates an individual from liability for public policy reasons, even when that individual has engaged in conduct that would otherwise be actionable. By contrast, a privilege recognizes that, because of the nature of their duties, some public officers may perform certain acts that might otherwise be tortious if committed by someone not having those duties. Against this background, the Court examines the various causes of action asserted under the FTCA.

■ a. *Assault.* The United States asserts a valid privilege to the assault claim. The assault claim is based on the agents' decision to draw and point their weapons at the Plaintiffs. Plaintiffs' Response to Defendants' Motion for Summary Judgment, Apr. 20, 1994, pp. 24–25. A person commits an assault under Texas law if he intentionally or knowingly threatens another with imminent bodily injury. However, a peace officer who points a gun at someone as a conditional threat to use actual force if necessary is privileged from this tort liability. *Hinojosa,* 834 F.2d at 1231.

The Plaintiffs attempt to distinguish this case from *Hinojosa* on the ground that the agents here drew and aimed their weapons

---

**3.** The United States "does not contend that the discretionary function exception [under § 2680(a)] would apply under the facts of this case." United States' Response to Court's Order, Feb. 21, 1995, p. 3.

even though they already had the situation under their complete control. *See Hinojosa*, 834 F.2d at 1231 n. 13 (stating that the court did not speak to the situation where officers point their weapons at an individual even though the "total situation is and will remain wholly stable and controlled"). The evidence does not support Plaintiffs' contention. The agents drew their weapons while Plaintiffs were still in their vehicle and possibly dangerous. They holstered them as soon as Plaintiffs had been frisked and secured. Moreover, the *Hinojosa* court held the officer's actions privileged even though hindsight might afford a basis for concluding there was no need to point a weapon at the plaintiff. *Id.* at 1232. Finding the agents were privileged in aiming their weapons at Plaintiffs, the Court GRANTS the United States' motion for summary judgment on the assault claim.

 b. *False arrest and false imprisonment.* False arrest and false imprisonment include the same elements under Texas law. Plaintiffs must show a (1) willful detention; (2) without consent; and (3) without authority of law. *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex.1985). Texas law authorizes any peace officer to arrest, without warrant, persons "found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace...." Tex.Crim.Proc.Code Ann. Art. 14.03. (West 1977). It also authorizes a peace officer to temporarily detain an individual for investigatory purposes if the officer has a reasonable suspicion that the person has committed a crime. *E.g., White v. State*, 695 S.W.2d 799 (Tex.App.—Amarillo 1985, no writ).

As U.S. Border Patrol agents, DeLeon and Rangel possess the authority to enforce certain U.S. immigration laws. This includes authority to investigate and arrest individuals trafficking illegal aliens. *See* 8 U.S.C. § 1324(c) ("No officer or person shall have authority to make any arrest for a violation of any provision of this section except officers and employees of the Service designated by the Attorney General ... and all other officers whose duty it is to enforce criminal laws."). The Court held in its January 18, 1995 order that Agents DeLeon and Rangel possessed the reasonable suspicion necessary to stop and detain Plaintiffs. The Court also held that the detention lasted only as long as necessary to clear the agents' suspicion of criminal activity. Hence, the agents' detention of Plaintiffs was authorized by law. Because Plaintiffs cannot establish an essential element of their claims, the Court GRANTS the United States' motion for summary judgment on these claims.

 c. *Intentional infliction of emotional distress.* To state a claim for intentional infliction of emotional distress, the Plaintiffs must show that (1) the agents acted intentionally or recklessly, (2) that the agents' conduct was extreme and outrageous, (3) that the agents' actions caused them emotional distress, and (4) that the emotional distress was severe. *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993). To be extreme and outrageous, the Defendants' conduct must gone have "beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society." *Wornick v. Casas*, 856 S.W.2d 732, 734 (Tex.1993) (quoting Restatement (Second) of Torts § 46 cmt. h (1965)). "It is for the Court to determine, in the first instance, whether the [agents'] conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Danawala v. Houston Lighting & Power Co.*, 14 F.3d 251, 256 (5th Cir.1993) (quoting Restatement (Second) of Torts § 46 cmt. h).

 The crux of Plaintiffs' claim is that Agents Rangel and DeLeon used profane language, pointed their weapons at the Plaintiffs, and detained Plaintiffs for approximately half an hour. *See* Plaintiffs' Supplemental Response to Defendants' Motion for Summary Judgment, June 10, 1994, p. 21. That the agents used "felony stop" tactics in apprehending Plaintiffs was entirely reasonable under the circumstances. The agents had

received radio transmissions indicating that Plaintiffs had eluded another agent in a marked patrol vehicle over a stretch of highway known for alien and drug smuggling. Thus, they had reason to take standard precautions when first encountering Plaintiffs. The agents holstered their handguns as soon as Plaintiffs had been frisked and handcuffed, and the evidence refutes the allegation of an unreasonably prolonged search of Plaintiffs and their vehicle. While some uncertainty does exist as to the length of the detention, it is undisputed that the agents released the Plaintiffs immediately after determining that no criminal activity was afoot.

An issue of fact does exist as to whether, in the excitement of the moment, the agents used profanities in ordering the Plaintiffs to exit their vehicle. Nonetheless, the agents' use of profanities, like the rest of their conduct, was not extreme and outrageous. As the commentary to the Restatement notes, "[t]he rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." Restatement (Second) of Torts § 46 cmt. d. Because the agents' conduct was not extreme and outrageous as a matter of law, the Court GRANTS the United States' motion for summary judgment on this claim.

■■ d. *Negligent infliction of emotional distress.* Because the Texas Supreme Court held in *Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex.1993), that Texas does not recognize an independent cause of action for negligent infliction of emotional distress, the Court GRANTS the United States' motion for summary judgment on this claim.

■■ e. *Negligence.* In its January 18, 1995 memorandum and order, the Court asked Plaintiffs to explain the basis for their general negligence claim. They responded that "Border Patrol agents owed a duty to Plaintiffs to accurately and faithfully follow procedures and mandatory instructions in executing a pursuit or detention. The Border Patrol agents breached this duty when they flagrantly failed to follow these instructions and subjected Plaintiffs to a roadblock and verbal abuse and obscenities." This allegedly resulted in "emotional and psychological injury." Plaintiffs' Brief Addressing Issues Raised by Dist. Judge, Feb. 3, 1995, p. 14.

Specifically, Plaintiffs complain that the Border Patrol agents violated several internal regulations pertaining to the manner of conducting high-speed pursuits and erecting roadblocks. However, the damages allegedly sustained by Plaintiffs did not result from being followed but rather from allegedly being assaulted and falsely arrested. Further, with regard to regulations on roadblocks, any breach might be relevant had Plaintiffs been injured while crashing through a barricade, but they were not. Plaintiffs' real grievance is that they were forced to stop. Whether they stopped because of agents ahead of or behind them is, for purposes of this claim, legally irrelevant. The layering of this general negligence charge on top of the specific claims for assault and false arrest does, as the Government suggests, sound suspiciously like an impermissible claim for negligent infliction of emotional distress. The Government's motion for summary judgment as to this claim is GRANTED.

*Conclusion*

The Court GRANTS Defendants' Motions for Summary Judgment on each of Plaintiffs' claims.