**Joe Alfred IZEN, Jr., Plaintiff,**

v.

**Terrance CATALINA, et al., Defendants.**

**No. H–97–1568.**

United States District Court, S.D. Texas, Houston Division.

Sept. 18, 2002.

Joe Alfred Izen, Jr, Bellaire, Pro se.

Karen Suter Izen, Bellaire, Pro se.

Joseph A Pitzinger, III, Dept of Justice, Tax Division, Dallas, for Terrance Catalina, Special Agent, Individually, James Climer, Special Agent, Individually, United States of America, defendants.

### MEMORANDUM AND ORDER

ATLAS, District Judge.

This *Bivens* action is before the Court on Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment After Remand [Doc. # 77] and the United States' Motion to Dismiss or for Summary Judgment After Remand [Doc. # 93] (collectively "Defendants' Motions"). The matter has been fully briefed and is ripe for determination.[1] Having considered the parties' submissions, all matters

---

1. *See* Defendants' Supplement to Motion to Dismiss or for Summary Judgment After Remand [Doc. # 80]; Plaintiffs' Response to Motion to Dismiss or for Summary Judgment After Remand and Supplement [Doc. # 85]; Affidavit of Joe Alfred Izen, Jr. in Opposition to Defendants' Motion to Dismiss or For Summary Judgment After Remand ("Izen's Affidavit") [Doc. # 84]; Reply by Defendants to Response to Motion to Dismiss or for Summary Judgment After Remand [Doc. # 86]; Plaintiffs' Supplemental Briefing on Malicious Prosecution and First Amendment Retaliation Claims [Doc. # 94]; Defendants' Response to Supplemental Briefing on Malicious Prosecution and First Amendment Retaliation Claims [Doc. # 96]; Plaintiffs' Response to United States' Motion to Dismiss or for Summary Judgment After Remand [Doc. # 101]; Defendants' Reply to Plaintiffs' Response to United States' Motion to Dismiss or for Summary Judgment After Remand [Doc. # 104].

of record, and applicable legal authorities, the Court concludes that Defendants' Motions should be **granted.**

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

At all times relevant to this matter, Defendants Terry Catalina and Jim Climer were agents with the Criminal Investigation Division ("CID") of the Internal Revenue Service ("IRS"). Plaintiff Joe Alfred Izen, Jr. is a lawyer who lives in Bellaire, Texas and Plaintiff Karen Suter Izen is his wife. In August 1989, Catalina received a referral from the Waco, Texas IRS collection office alleging that Izen had not filed his 1986, 1987, and 1988 income tax returns and had not paid income taxes for those years. The referral contains allegations from a third-party informant that Izen was involved in money laundering, including allegations, among others, that Izen was personally involved in the failure of a private bank in Texas and held large sums of money in accounts in the Isle of Man. The referral also references Izen's deposition in divorce proceedings, in which he disclosed personal knowledge regarding a Bahamian tax shelter and its owner. Catalina, who knew nothing of Izen prior to receiving the referral, on October 16, 1989 accepted the referral for investigation of the charge of failure to file tax returns, but determined there was insufficient basis to begin a money laundering investigation at that time. Catalina explains that it was IRS policy to investigate individuals who had not filed tax returns but had an obligation to do so. Catalina thus believed he was following IRS policy when he recommended opening a criminal income tax investigation on Izen for the years 1986–88. Catalina and his supervisor also recommended including 1985 in the investigation, although a return had been filed.

Catalina recommended to the Department of Justice that the investigation be conducted through a grand jury. The United States Attorney was authorized to undertake a grand jury investigation in December 1989.

Meanwhile, Izen filed his 1986 return in September 1989, after Catalina received the referral from the Waco office, but Catalina states that he was unaware of that fact. Izen did not file his 1987 and 1988 returns until April, 1990. Izen received refunds for the 1987 and 1988 tax years in June, 1990.

In April 1990, Catalina reviewed various investigative reports on Nassau Life Insurance Company Limited ("NLIC"), a company with which Izen had an employment contract for full-time work in 1985, and persons and banks related to or doing business with that entity. Catalina also reviewed various people's tax records, offshore bank records, and other information on fugitives fleeing federal and state criminal convictions or charges. Catalina then decided to expand the investigation to include an undercover investigation of Izen's possible involvement in money laundering. Climer was the undercover agent assigned to the investigation. Climer posed as a client seeking to create a foreign trust in which to deposit proceeds of the sale of stolen oil. The investigation continued from April 1990 until January 1992. Climer tape recorded numerous conversations he had with Izen during the undercover investigation.

Catalina testified before the grand jury in May 1995. The grand jury returned a four-count indictment against Izen for conspiracy to commit money laundering and aiding and abetting or attempting money laundering.[2] Izen was not indicted for tax evasion. In May 1996, the United States

---

**2.** *See* Indictment, attached to Defendants Catalina's and Climer's Motion to Dismiss, or

for Summary Judgment on Plaintiff's First Amended Complaint [Doc. # 43].

moved to withdraw the presentment of the indictment and all criminal charges against Izen were dismissed.

Izen commenced this case on May 5, 1997, alleging various constitutional and non-constitutional torts. The matter was referred to Magistrate Judge Calvin Botley. Based on Judge Botley's Memorandum and Recommendations, the Court dismissed all of Izen's claims.[3] Izen appealed the dismissal of his malicious prosecution, Fifth Amendment, and retaliatory prosecution claims, the denial of his motion for disclosure of grand jury materials, and the summary judgment in favor of Defendants on their qualified immunity defense.

The Fifth Circuit affirmed the dismissal of the Fifth Amendment claim, but reversed the dismissal of the malicious prosecution and retaliatory prosecution claims and remanded the matter to this Court for further proceedings consistent with its opinion.[4] *See Izen v. Catalina,* 256 F.3d 324 (5th Cir.2001).

After remand, the Court granted Izen leave to file a Second Amended Complaint to join his wife, Karen Suter Izen, as a Plaintiff and to add a Federal Tort Claims Act cause of action against the United States. Plaintiffs' Second Amended Complaint alleges the following causes of action: (1) Fourth Amendment malicious prosecution; (2) retaliatory prosecution proscribed by the First Amendment; (3) disparagement in violation of the First Amendment; (4) selective prosecution in violation of the First Amendment;[5] (5) interference with liberty interests in violation of the Fifth Amendment; and (6) Federal Tort Claims Act claim based on the state torts of malicious prosecution, false arrest, intentional infliction of emotional distress and negligence. Plaintiffs' third and fourth causes of action were dismissed by the Court prior to Izen's appeal. These rulings were not appealed, and they became final. Izen appealed the dismissal of Plaintiff's fifth cause of action, and the Fifth Circuit affirmed the district court in that respect. Thus, only Plaintiffs' malicious prosecution, retaliatory prosecution, and newly added Federal Tort Claims Act causes of action are currently before the Court.[6] The Court discusses additional facts below as necessary to its analysis of these claims.

## II. *SUMMARY JUDGMENT STANDARD*

Defendants have styled their motions as Motions to Dismiss or for Summary Judg-

---

**3.** The Court dismissed Izen's Federal Tort Claims Act cause of action against the United States in February 1999 on the grounds that he had not exhausted his administrative remedies as required by 28 U.S.C. § 2675. *See* Memorandum and Order entered February 24, 1999 [Doc. # 36]. Judge Botley subsequently denied Izen leave to amend his Complaint to reassert a FTCA claim and join his wife as a Plaintiff. *See* Order entered April 19, 1999 [Doc. # 45]. The Court dismissed the remaining claims in its Memorandum and Order entered September 28, 1999 [Doc. # 62].

**4.** The Fifth Circuit also affirmed the denial of Izen's motion for grand jury materials. *Izen,* 256 F.3d at 329–30.

**5.** Although labeled as a First Amendment claim, Plaintiff asserts that he was treated differently than other similarly situated individuals. This type of selective prosecution claim implicates ordinary equal protection standards. *See United States v. Jones,* 287 F.3d 325, 333 (5th Cir.2002) ("The requirements for a selective prosecution claim draw on ordinary equal protection standards. The claimant must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose."); *see Bryan v. City of Madison,* 213 F.3d 267, 277 and n. 18 (5th Cir. 2000) (selective prosecution is a type of equal protection claim recognized in this circuit).

**6.** The parties have not briefed any other purported causes of action.

ment. Thus, Plaintiffs were given notice in the original motions that Defendants were seeking summary judgment. In addition, this Court's Order issued September 9, 2002 [Doc. # 105] expressly gave Plaintiffs notice that the Court would treat the pending motions as motions for summary judgment. Plaintiffs have had ample opportunity to present evidence in response to Defendants' Motions, and have done so. The Court will consider Defendants' Motions under the standards governing summary judgment motions under Rule 56 of the Federal Rules of Civil Procedure.

Rule 56 of the Federal Rules of Civil Procedure mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Baton Rouge Oil and Chemical Workers Union v. Exxon-Mobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir.2002). An issue is material if its resolution could affect the outcome of the action. *Terrebonne Parish School Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir.2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986)). In deciding whether a fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Hotard v. State Farm Fire and Cas. Co.*, 286 F.3d 814, 817 (5th Cir.2002). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir.1999).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. The movant meets this initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). If the movant meets this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir.2001).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir.1998). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Id.* Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* A dispute about a material fact is genuine only if evidence is such that a reasonable jury could return a verdict for nonmoving party. *Littlefield*, 268 F.3d at 282. In the absence of any proof, the court will not assume that the nonmovant could or

would prove the necessary facts. *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir.1995); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

## III. ANALYSIS

### A. § 1983 Malicious Prosecution

Izen asserts a cause of action for malicious prosecution in violation of the Fourth Amendment. The Fifth Circuit has identified the following as elements of a malicious prosecution cause of action:

(a) a criminal action was commenced against plaintiff;

(b) the prosecution was caused by defendant(s);

(c) the criminal action terminated in plaintiff's favor;

(d) plaintiff was innocent;

(e) defendant(s) acted without probable cause;

(f) defendant(s) acted with malice; and

(g) the prosecution damaged plaintiff.

*Izen*, 256 F.3d at 328 (citing *Taylor v. Gregg*, 36 F.3d 453, 455 (5th Cir.1994)). This Court's initial dismissal of Izen's malicious prosecution claim was based solely on the Magistrate Judge's recommendation that the criminal action, in which the government voluntarily dismissed the charges against Izen before trial, did not as a matter of law terminate in Izen's "favor." The Fifth Circuit reversed that holding, and remanded this case "for consideration of whether the defendants had

probable cause and acted with malice when prosecuting Izen." *Id.* at 328–29. In its opinion, the Fifth Circuit did not address any element of the cause of action other than whether the prosecution was terminated in plaintiff's favor.

Since deciding *Izen*, the Fifth Circuit has revisited the standards governing § 1983 malicious prosecution claims, stating: "It would be an understatement to say that this circuit's case law regarding so-called 'Fourth Amendment malicious prosecution' claims under § 1983 is both confused and confusing." *Gordy v. Burns*, 294 F.3d 722, 725 (5th Cir.2002). The *Gordy* opinion notes that in most circuits, a § 1983 plaintiff who alleges malicious prosecution must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to certain elements of the common law tort of malicious prosecution. *Id.* at 726. "But in the Fifth Circuit, a plaintiff in a § 1983 malicious prosecution action need establish only the elements of common-law malicious prosecution. This circuit repeatedly has indicated—without explanation—that courts must look to the elements of a malicious prosecution claim under the law of the state where the offense was committed." *Id.* The Fifth Circuit concluded that while state law determines the elements of the claim, federal law determines the scope and meaning of those elements.[7] *Id.* at 726–27. The crux of this case, as it was in *Gordy*, is whether there was probable cause for the criminal proceedings against the plaintiff. In *Gordy*, the Fifth Circuit explained the probable cause inquiry in the context of a malicious prosecution claim:

---

7. The Fifth Circuit expressed some dissatisfaction with this approach, noting that if the events had taken place in Texas, the plaintiff would have to prove that he was actually innocent of the charges, an element not required under Louisiana law. *Id.* at 727. The

court observed: "[i]f malicious prosecution is in some sense a federal constitutional tort, the outcome of the case should not hinge on how a state defines and shapes the elements of a tort claim." *Id.*

For purposes of malicious prosecution, probable cause means 'the existence of such facts and circumstances as would excite the belief, in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted.' *Id.* at 728 (citing *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir.1999)). The Court further explained that "prosecutor" refers to any person who initiates or procures a criminal proceeding, and that obtaining an indictment will not insulate state actors from a malicious prosecution claim if a grand jury's decision "has been tainted by the malicious actions of the government officials." [8] *Id.*

■ Under *Gordy*, the Court probable cause inquiry is "whether a reasonable officer would believe to a 'fair probability' that a crime had been committed." *Id.* "[T]he probable cause analysis only requires that [the Court] find a basis for an officer to believe to a 'fair probability' that a violation occurred." *Id.* at 729. This

---

**8.** Defendants argue that the indictment by the grand jury proves probable cause as a matter of law. *See* Defendants' Motion, at 14–15 (citing *Rodriguez v. Ritchey*, 556 F.2d 1185, 1191 (5th Cir.1977) (*en banc*), and *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir.), *cert. denied*, 459 U.S. 1005, 103 S.Ct. 361, 74 L.Ed.2d 397 (1982)). Izen contends that Defendants are not shielded from liability by the grand jury indictment because Catalina misled the grand jury into believing the Izen had not paid his taxes for 1986, 1987, and 1988. *See* Plaintiffs' Response, at 5–7. Izen's characterization of Catalina's grand jury testimony is dubious at best. The testimony relied upon by Izen is as follows:

> **Foreman:** You targeted Izen, I believe you said at the beginning, because he had not paid taxes in '86, '87 and '88?
> **[Catalina]:** We had a referral from our Collection Division, yes, that indicated that-
> **Foreman:** -that he had not filed his income tax returns for three years?
> **[Catalina]:** That's correct, uh-huh.
> **Foreman:** So, I mean, that would have had to be the reason that you targeted him, -
> **[Catalina]:** That's right.
> **Foreman:** -and that's the reason you targeted—you set up this string operation because, I assume, you probably suspected that maybe he had done some illegal activities in the past. You don't know that -
> **[Catalina]:** Well, that's a good question. Well, now, he's legal counsel for a convicted felon who's helping other people commit crimes. So, we did make some—we had some beliefs there that he would be willing to do something like this.
> **Member:** Why not get him on income tax evasion?
> **[Catalina]:** Well, we could have.

> **Member:** To me that would seem more logical.
> **[Catalina]:** We probably could have, but I suspect we would have had trouble with getting the information from the clients and things. It may have been tougher -
> **Member:** There's several hundred thousand attorneys that have ex-felons as -
> **[Catalina]:** No, no, no. He's representing—he's legal counsel as far as trusts and things. I mean, he's not representing them necessarily in litigation. He's not representing them in a litigating-type situation here. When it has to do with the Nassau Life, he's saying, you know, these trusts are legal, they are valid. He is writing legal opinions that people are relying on to, in turn, use these trusts. I'm not saying because someone represents someone who is a criminal, that that makes them bad, no. But he's allowing this business to go on by the fact that he's associated with it.

Grand Jury Testimony of Catalina, May 3, 1995, at 72–73 (Exhibit A to Izen's Affidavit in response to Defendants' motion to dismiss or for summary judgment before remand [Doc. # 54].). There is nothing false or misleading about this testimony. Although Izen eventually paid his taxes, he had not done so at the time the investigation was begun, and he did not do so on time. Defendant's failure to clarify that Izen paid his 1986, 1987, and 1988 taxes did not impact materially on the grand jury's decision to indict him for money laundering. Nevertheless, the Court does not base its decision on this point. As explained in the text, the record establishes that there was probable cause to believe that Izen had aided in the commission or conspired to commit money laundering.

analysis is conducted as of the time when criminal proceedings were instituted, *i.e.,* when criminal charges are actually filed, and based solely on the facts as the officers honestly and reasonably believed them to be at the time they institute the proceedings. The inquiry does not require a showing that the officer's belief was correct, nor that it was more likely true than false. *Id.* at 729.

Izen was indicted for aiding and abetting money laundering and conspiracy to launder money.[9] The crime of money laundering requires proof of the following:

(1) that the defendant knowingly conducted or attempted to conduct a financial transaction;

(2) that the financial transaction involved the proceeds, or property represented to be the proceeds, of a specified unlawful activity;

(3) that the defendant knew the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and

(4) that the defendant either intended to promote the carrying on of the specified unlawful activity or knew that the transaction was designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds.[10]

The Fifth Circuit summarized the essence of the crime of money laundering in *United States v. Dobbs,* 63 F.3d 391, 397 (5th Cir.1995):

The government must prove that the specific transactions in question were designed, at least in part to launder money. It is necessary to show a desire to create the appearance of legitimate wealth or otherwise to conceal the nature of funds so that it might enter the economy as legitimate funds. The purpose of the money laundering statute is to reach commercial transactions intended (at least in part) to disguise the relationship of the item purchased with the person providing the proceeds and that the proceeds used to make the purchase were obtained from illegal activities.

(internal citations omitted.).

In order to prove that Izen aided and abetted money laundering, the government would have had to prove that Izen "associated himself with the unlawful financial manipulations, that he participated in them as something he wished to bring about, and that he sought, by his actions, to make the effort succeed." *Rivera,* 295 F.3d at 468. To be guilty of conspiracy to launder money, *see* 18 U.S.C. § 371, the following must be shown:

(1) that the defendant and at least one other person made an agreement to commit the crime of money laundering as charged in the indictment;

(2) that the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and

(3) that one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy.

---

9. The IRS criminal investigation ultimately led to the investigation of another individual, Reinhold Sommerstedt, who was indicted for conspiring with Izen to launder money. Sommerstedt is not, and has never been, a party to this civil action.

10. *See* Fifth Circuit Pattern Jury Instructions, Laundering of Monetary Instruments (18 U.S.C. §§ 1956(a)(1)(A)(I), 1956(a)(1)(B)(I), 1956(a)(3)(A), and 1956(a)(3)(B)); *United States v. Rivera,* 295 F.3d 461, 467 (5th Cir. 2002).

*See Rivera,* 295 F.3d at 468; Fifth Circuit Pattern Jury Instructions, Conspiracy (18 U.S.C. § 371).

The Court must determine whether the information known to Defendants at the time of Izen's prosecution provided a basis for Defendants to believe to a "fair probability" that Izen committed the crimes of aiding and abetting and conspiracy to commit money laundering.

### 1. Catalina

 The evidence establishes that Catalina initially began a criminal investigation of Izen in 1989 based on Catalina's understanding that Izen had failed to file tax returns for 1986, 1987 and 1988.[11] Although Catalina was aware at the outset of allegations by an informant that Izen was involved in money laundering, Catalina recognized that the informant might not be "ethically pure," and therefore sought corroborating evidence before expanding the investigation to include money laundering or a money laundering conspiracy.[12]

Over time, Catalina obtained other information on Izen that led Catalina to believe there was a "fair probability" that Izen was involved in some way in a money laundering scheme. This information included Izen's involvement with Nassau Life Insurance Company, Ltd. ("NLIC"), a tax shelter that operated out of the Bahamas. Catalina reviewed, *inter alia,* a December 1986 Summary Report regarding NLIC [13] that stated that the founder and president of NLIC, Robert Chappell, was a fugitive on a mail fraud conviction; Chappell was living in the Bahamas and was associated with several anti-government fugitives; Chappell assisted others to create "contractual companies" and trusts which the IRS believed were merely vehicles to avoid taxes by placing taxpayers' assets outside the United States and otherwise lack economic substance; NLIC utilized the services of Chilton Private Bank in Chilton, Texas; the IRS had opened 105 cases on taxpayers having some involvement with NLIC and had obtained numerous tax crime convictions; and that Izen had been representing NLIC since 1983, and had a full-time employment contract with that entity for at least a year. *Id.* The Summary Report was prepared well before Catalina received the referral from Waco containing the informant's allegations, and appears to have been compiled from internal IRS sources. There is no indication that any of this information contained in the Summary Report came from Easton, the allegedly untrustworthy informant.

Catalina also reviewed an undated Memo to the Assistant Regional Commissioner of the IRS drafted by the acting Assistant Commissioner.[14] This Memo described schemes perpetrated by NLIC involving transferring assets to a foreign business trust organization to protect them from seizure by the IRS and involving loans created to generate phony interest deductions. *Id.* Again, there is no indication that this information came from the allegedly untrustworthy informant.

Another memo reviewed by Catalina [15] indicates that a suspect interviewed during

---

**11.** Catalina, apparently later in 1989, learned Izen in fact had filed his 1986 return, but had not filed the 1987 or 1988 returns. Still later, Catalina became aware that Izen filed these latter two returns in April 1990.

**12.** Defendants have redacted the name of the informant from their evidence, but Plaintiffs contend that the informant was a man named

Michael J.B. Easton. Defendants do not contest this identification.

**13.** Defendants' Exhibit 48.

**14.** Defendants' Exhibit 49.

**15.** Defendants' Exhibit 50.

an Atlanta IRS District undercover operation related to NLIC described various schemes used by NLIC to launder money, including the use of Chilton Private Bank. The name of the informant has been redacted, but he is identified as a "Nassau Life promoter" and there is no indication that this information came from Easton. *Id.*

Catalina learned from an article in the *Waco Tribune Herald* published on June 9, 1987,[16] that the former Manager of the then-closed Chilton Private Bank was charged with attempting to defraud the IRS and opening a bank account using a fictitious name.[17]

Catalina learned that Izen had a March 25, 1985 employment contract to provide full-time legal services to NLIC under which Izen was to be paid a minimum of $300,000.[18] The employment contract states "you have pursued, and will continue to pursue the formation of a commercial bank with mutual clients and with your former clients." *Id.*

Catalina also considered suspicious several statements made by Izen himself in his August 27, 1987 divorce deposition.[19] Among these statements were admissions that Izen attempted to set up offshore banks on at least four occasions in the Isle of Man, the Bahamas, the Turk & Caicos Islands or the Cayman Islands, and Guyana, and that he had traveled to the Republic of Guyana, the Turk & Caicos Islands,

Saint Vincent, the Isle of Man, and the Bahamas. *Id.* In addition, the deposition reveals that Izen had a bank account in the Bahamas containing more than a hundred thousand dollars, which he did not reveal on his 1985 tax return. *Id.*[20]

Having reviewed all of the above information, Catalina (with his manager's concurrence) arranged for Izen to be contacted and asked if he would be willing to set up an offshore trust. Izen agreed. At this point, Catalina and his supervisor recommended, and obtained approval to conduct an undercover investigation of Izen. Climer (whom Catalina did not know prior to this time) was assigned to act as the undercover agent on the case. Climer posed as an investor seeking to set up a foreign trust in which to deposit the proceeds of an illegal scheme, the sale of allegedly stolen oil. Climer contacted Izen on numerous occasions. Transcripts of those conversations reveal that Climer told Izen that the funds were the proceeds of an illegal activity, *i.e.*, the sale of stolen oil, and that Izen nonetheless agreed to set up the off-shore trust.[21] Izen advised Climer on procedures for accessing the money by way of loans from the foreign trust. Izen further advised Climer that eventually Climer would have to report income from the trust on his tax returns. When Climer stated that he would rather not list the source of the income on his tax returns as proceeds from stolen oil, Izen informed

---

16. Defendants' Exhibit 51.

17. The article also reported that the private bank had been closed and was to be liquidated after its owner, John Landa, was indicted for tax fraud and racketeering arising from other business activities.

18. *See* Defendants' Exhibit 43.

19. *See* Defendants' Exhibit 44.

20. Catalina, further, was aware that Izen's bank account in the Bahamas was essentially drained in 1986–1987. The bank statement

for the account, Defendants' Exhibit 45, indicates that the account had a balance of $122,375.44 on May 30, 1986, $41,748.44 on December 18, 1986, and $3,739.44 on March 10, 1987. According to an internal IRS document summarizing records of a Cayman Island Bank, Defendants' Exhibit 52, two additional accounts were established at the bank by other individuals using the address of Izen's law office in Houston, Texas.

21. *See* Izen's Affidavit, Exhibit D.

him that he could identify the source simply as "other."

This collection of information amply suffices to satisfy as a matter of law the probable cause standard. Catalina had knowledge of sufficient matters to form a belief to a "fair probability" that Izen had engaged in, assisted in, or conspired in a money laundering scheme. *See Gordy,* 294 F.3d at 728.

Izen attempts to counter the above evidence of probable cause with his own Affidavit, in which he offers purportedly innocent explanations for the conduct deemed suspicious by Catalina. Izen asserts that, contrary to Easton's allegation that Izen was involved in large transfers of funds from Chilton Private Bank to offshore banks, the only contact Izen had with Chilton Private Bank was his representation of some depositors in tax proceedings. He further claims that the only ties he had with Robert Chappell was his representation of NLIC on legal matters. Izen further points out that setting up foreign trusts, attempting to set up foreign banks, having an offshore bank account, and traveling to "tax haven" countries, are not themselves illegal activities. Izen explains that he did not report money paid into his Bahama's account on his 1985 tax return because he understood the account to be an annuity which did not need to be reported until paid out, and he claims to have reported withdrawals from the account on his 1986 and 1987 returns. Izen points out that many of the IRS's 105 cases opened on taxpayers involved with NLIC did not result in convictions, and further denies that he personally ever took part in the schemes the IRS attributes to

NLIC. Izen also denies any knowledge that two taxpayers utilized his law office as the address on their Cayman Island bank accounts. Izen attributes the late filing and payment of his 1986 tax returns to his bookkeeper absconding with his records, and claims his wife converted the funds from the Bahamas bank account for her own use.

Izen's Affidavit does not contradict any of the factual allegations relied upon by Catalina, but attempts to explain them away. Izen's after-the-fact denials are not sufficient to negate Catalina's belief that probable cause existed. Probable cause is determined on the basis of the information "honestly and reasonably" believed by the government investigators (here, Catalina) at the time of the decision to prosecute. *See Gordy,* 294 F.3d at 728.[22] Izen's evidence does not raise a genuine issue of material fact as to the existence of probable cause.

Furthermore, Izen's arguments in opposition to summary judgment are unpersuasive. Izen argues that because he told Climer that income from the trust may eventually have to be reported on his tax returns, there is no evidence Izen intended to "conceal" the funds, and therefore no evidence of the crime of money laundering. Izen's isolated self-serving comment does not negate the crime of aiding and abetting or conspiring to commit money laundering established by his taped conversations with Climer, particularly when considered in context with other documentary and circumstantial information Catalina possessed. In response to Climer's inquiries, Izen described a mechanism whereby Climer could conceal and accu-

---

**22.** The Court does not rely on Defendants' theory that the grand jury's indictment insulates them from liability as a matter of law. Although the record contains only those portions of the Climer transcripts that *Izen* has submitted as evidence, and not portions of the transcripts Defendants believe support the grand jury's vote of indictment, the limited record is sufficient to defeat Izen's contentions on summary judgment and his legal claims pleaded in the Second Amended Complaint.

mulate money in a foreign trust before distribution without paying taxes, with no limit on how long money could be accumulated. Climer made it clear from the beginning of his contact with Izen that his purpose and intent was to disguise the source of money illegally obtained from the sale of stolen oil. Izen explained to Climer how to repatriate the money through loans back to himself disguised as loans from foreign investors. Climer made it clear he and his partner did not want their names on the accounts because "that kills the whole purpose of it." Izen told Climer that a loan from the trust would be through an application to the trustee, and that the trust would own the funds.[23] As Izen put it, "you have to give up something to get something." Izen insisted that in this way, a loan from the trust to Climer was not really a just loan to and from Climer himself. Izen knew at all times that he was setting up a financial transaction the purpose of which was to conceal the source of proceeds from an illegal activity. Izen arranged to make Climer and his unidentified partner beneficiaries for a trust in the Turks and Caicos Islands, and to facilitate repatriation of the money in the form of loans to Climer and his partner from the trust. Thus,

even accounting for Izen's explanations, which is not required, Catalina had sufficient information to support a belief to a "fair probability" that Izen had aided and abetted, or had conspired to commit, if not personally had committed, money laundering.

Izen further argues that his malicious prosecution claim is supported by Defendants' failure to investigate certain exculpatory information. Izen's argument misses its mark. It is true that deliberately concealing or failing to disclose **known** exculpatory evidence can form the basis for an inference that a defendant acted with malice in initiating and maintaining a prosecution. *Sanders v. English,* 950 F.2d 1152, 1163 (5th Cir.1992). However, Izen's allegations relate not to the government agents' withholding of exculpatory information, but rather Defendants' alleged failure to investigate adequately.[24] Izen cannot base his malicious prosecution claim on mere negligence by Defendants in their investigation. *Id.* at 1159. A malicious prosecution claim evaluates the evidence as of the time charges are brought. *Gordy,* 294 F.3d at 728. Izen presents no evidence that he informed Defendants or

---

**23.** Although the United States has attested that complete and accurate tapes have been provided to Izen, Izen makes the conclusory and self-serving assertion that transcripts have been doctored. The only specific allegation Izen makes is that the December 26, 1991 transcript does not reflect an argument he recalls having with Climer regarding the ownership of trust funds. Izen does not submit the entire December 26, 1991 transcript or the tape for the Court's consideration. However, the substance of the allegedly omitted conversation is reflected in the September 5, 1991 transcript. Izen does not raise a genuine fact issue as to probable cause for the prosecution.

**24.** Izen cites *Dirienzo v. United States,* 690 F.Supp. 1149 (D.Conn.1988). In that case,

the plaintiff claimed that even if there was probable cause to institute the prosecution, there was no probable cause to continue the prosecution after further information and the opportunity to investigate became available. *Id.* at 1157–58. The court noted that "continued prosecution after facts sufficient to exonerate the accused have been provided may give rise to an action for malicious prosecution under New York law." *Id.* at 1158. Aside from being a statement of New York law, the principle expressed in *Dirienzo* is inapplicable here, since there is no evidence that Defendants knowingly withheld *exculpatory* information from the grand jury. Izen was not indicted for his activities with NLIC, nor for failure to file tax returns or other tax crimes. He was indicted for his conduct during the undercover operation.

any investigators, of any of his *post hoc* explanations.

In any event, in response to Catalina's detailed listing of information in support of probable cause, Izen presents only his own denials and assertions as to the existence of "exculpatory" evidence, *e.g.*, Chilton Bank records that allegedly would refute Easton's assertion that Izen transferred large sums of money from the bank. Izen does not address the bulk of the evidence Catalina considered. Even if Izen's interpretation of the Chilton Bank records is accurate, the evidence is not actually exculpatory. It merely reflects that Izen did not use Chilton Bank as Catalina may have initially suspected. Izen's alleged involvement with Chilton Bank represents only a small portion of the information Catalina had at the time of his initial decision to pursue a criminal investigation and later to request that criminal charges be brought against Izen. Izen's representations do nothing to negate the incriminating statements and the suspicious actions by Izen reflected in the transcripts of his conversations with Climer.

Applying the applicable legal standards governing money laundering (and aiding and abetting or conspiracy to launder money) as well as the Fifth Circuit's test for probable cause, the Court concludes that Catalina had sufficient information to establish probable cause as a matter of law for the commencement of criminal proceedings against Izen, without any reliance on the information provided by the allegedly unreliable informant, Easton. Izen has failed to present evidence that creates a genuine question of fact that Defendant Catalina lacked probable cause to pursue criminal charges against Izen, or that Catalina targeted Izen because of Izen's representation of alleged tax evaders before the IRS. Accordingly, Catalina is entitled to summary judgment on Izen's § 1983

Fourth Amendment malicious prosecution claim.

**2. Climer**

As to Defendant Climer, summary judgment is appropriate for the same reasons set forth above.

Climer also is entitled to judgment as a matter of law because there is no evidence that he in any way caused the prosecution of Izen. Climer's only role was to pose as an investor seeking to launder funds obtained from the illegal sale of oil and to record his conversations with Izen. Climer was not involved in the decision to investigate or prosecute Izen and did not testify before the grand jury.

Izen argues that the law of the case precludes summary judgment on this second ground because the Fifth Circuit remanded the case for consideration only of whether Defendants had probable cause and acted with malice when prosecuting Izen. This argument is rejected. The Fifth Circuit did not address the "caused the prosecution" element of malicious prosecution. The Fifth Circuit's opinion does not preclude summary judgment in favor of Climer on this basis. "The law of the case doctrine applies only to issues that were actually decided, rather than all questions in the case that might have been decided but were not." *Clifford v. Gibbs,* 298 F.3d 328, 331 (5th Cir.2002). Summary judgment in favor of Climer is warranted on Izen's malicious prosecution claim.

**B. *§ 1983 Retaliatory Prosecution***

■ Izen asserts a cause of action for retaliatory prosecution in violation of his First Amendment rights. The Fifth Circuit has held that a prerequisite for a claim of retaliatory criminal prosecution in violation of the First Amendment is proof of the common law elements of malicious prosecution. *Keenan v. Tejeda,* 290 F.3d

252, 260 (5th Cir.2002). Because Izen has not adduced evidence sufficient to support his malicious prosecution claims, Izen similarly cannot meet his summary judgment burden on his retaliatory criminal prosecution claim.

██ Izen argues in support of his retaliatory prosecution claim that Defendants did not have probable cause to undertake the undercover operation against him. Plaintiff has presented no authority for the proposition that a retaliatory prosecution claim may lie for an investigation undertaken without probable cause. Indeed, this assertion is contrary to law. The Fifth Circuit has held that government agents do not need even a reasonable suspicion [25] (let alone probable cause) to begin an undercover sting operation. *See United States v. Allibhai*, 939 F.2d 244, 249 (5th Cir.1991). Courts have "uniformly dismissed the notion that the government must have a pre-existing basis for suspecting criminal activity before targeting an individual in an investigation." *Id.* These decisions are based on the realization that "a defendant has no constitutional right to be free from investigation." *Id.; United States v. Collins*, 972 F.2d 1385, 1395 (5th Cir.1992) (citing the holding in *Allibhai*). Thus, Izen's theory that Catalina's or Climer's involvement in the undercover operation constitutes retaliatory prosecution in violation of his First Amendment rights is without legal merit.

Izen further fails to meet his burden to create a fact issue on the retaliatory motive element of his retaliatory prosecution claim. In *Izen*, the Fifth Circuit stated that a plaintiff alleging retaliatory prosecution in violation of the First Amendment must show that he was prosecuted *at least in part* to retaliate for constitutionally protected conduct, and that "retaliation need not be the sole motive for prosecuting." 256 F.3d at 329 (emphasis added) (citing *Gates v. City of Dallas*, 729 F.2d 343, 346 (5th Cir.1984)).[26]

██ The Fifth Circuit had occasion to refine the standards governing a retaliatory prosecution or investigation claim in the very recent *Keenan* case. 290 F.3d at 258. In *Keenan*, the Fifth Circuit endorsed the settled law of other circuits holding that to establish a First Amendment retaliation claim in a case that does not involve an employment or contractual relationship with the government, plaintiff must show that (1) he was engaged in constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse actions were *substantially motivated* against the plaintiff's exercise of constitutionally protected conduct. *Id.* at 258 (emphasis added). Although issued almost a year after *Izen*, the *Keenan* opinion does not cite *Izen* for the elements of a retaliatory prosecution claim. Instead, the Fifth Circuit based its holding on cases from the Eighth, Tenth, and Sixth Circuits: *Carroll*

---

**25.** *See Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Chavez*, 281 F.3d 479, 485 (5th Cir.2002) (reasonable suspicion is a particularized and objective basis for suspecting criminal activity; it is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.)

**26.** In *Gates*, the plaintiff challenged the City of Dallas's alleged practice of filing, upon probable cause, perjury charges against complainants who make false charges. 729 F.2d at 346. Plaintiff did not appeal, and thus waived, the ruling on her claim that the individual decision to prosecute her was motivated in part by the desire to retaliate for her allegedly constitutionally protected conduct. The Fifth Circuit's summary statement of the law on which the *Izen* court relied was thus *dicta*, and was made with no analysis. *See infra* analysis of the two cases cited in *Gates*.

*v. Pfeffer,* 262 F.3d 847, 850 (8th Cir.2001) (holding that the defendants' adverse actions must be *"motivated in part"* against the plaintiffs' exercise of constitutionally protected conduct); *Smith v. Plati,* 258 F.3d 1167, 1176 (10th Cir.2001) (holding that the defendants' adverse actions must be *"substantially motivated"* against the plaintiff's exercise of constitutionally protected conduct); and *Lucas v. Monroe County,* 203 F.3d 964, 973 (6th Cir.2000) (holding that the defendants' adverse actions must be *"motivated at least in part"* against the plaintiff's exercise of constitutionally protected conduct.).

The *Keenan* decision is consistent with the Fifth Circuit's earlier explanation of the "at least in part" standard in *Smith v. Hightower,* 693 F.2d 359, 367 (5th Cir. 1982), which standard had previously had been enunciated in *Wilson v. Thompson,* 593 F.2d 1375, 1387 (5th Cir.1979). In *Smith* the prosecutor argued that the "at least in part standard" placed too low of a threshold on the plaintiff to make a case for retaliation because that standard, in effect, made any showing of retaliatory motive sufficient to meet the plaintiff's burden. The *Smith* court addressed this concern by explaining that the "at least in part" language must be read in conjunction with the clear holding in *Wilson* that the state may have many legitimate reasons for bringing a criminal prosecution and that it is only when the state's *primary* purpose is to retaliate for protected conduct that a plaintiff's rights are violated. *Smith,* 693 F.2d at 367 (emphasis added). Thus, the *Smith* court observed that "the *Wilson* Court contemplated that the plaintiff must prove retaliation was a *major motivating factor and played a prominent role* in the decision to prosecute." *Id.* (emphasis added).

Izen asserts in his retaliatory prosecution claim that his rights were violated because Defendants allegedly lacked prob-

able cause to pursue criminal charges after the sting operation concluded. Independent of the fact that Izen has failed to meet his burden on the probable cause element, the focus for summary judgment is whether Izen has created a genuine question of material fact on the issue of whether Defendants' alleged desire to thwart Izen's exercise of a constitutionally protected right was a major motivating factor in Defendants' decision to seek criminal charges against him. The Court concludes that Izen has failed to meet his summary judgment burden here also. Izen completely fails to present any evidence, direct or circumstantial, that Catalina or Climer had *any* retaliatory motivation against him. In addition, Defendants' evidence clearly establishes legitimate and substantial reasons for the money laundering investigation and prosecution aside from any alleged retaliatory motive. Defendants thus have met their summary judgment burden to present evidence that establishes probable cause for the prosecution as a matter of law, and have adduced uncontradicted evidence that retaliation was not a major motivating factor in the decision to investigate. Izen has not presented probative admissible evidence that creates a genuine fact issue on this element.

Izen, alternatively, contends that the Fifth Circuit's ruling requires a trial on the retaliatory prosecution claim. The Court disagrees. The Fifth Circuit reversed the grant of summary judgment against Izen on this claim because "[b]ased on the record and the briefs, there is a genuine issue of material fact as to the reasons Izen was investigated and prosecuted." *Izen,* 256 F.3d at 329. Defendants' first motion for summary judgment and Plaintiff's response focused on whether Catalina's grand jury testimony was false and, therefore, constituted evidence of a retaliatory motive. *See supra* note 8 (quoting Catalina's grand jury testimony

at issue). The Fifth Circuit's holding was expressly based on the limited record and briefs before that Court. The record was not complete as to the reasons Izen was investigated and prosecuted. Defendants now have submitted evidence to "explain the connection between Izen's late filing of tax returns and the agent's decision to begin an undercover sting operation to investigate possible money laundering through offshore trusts." *Izen*, 256 F.3d at 329. As noted above, Izen has not produced evidence sufficient to create a genuine fact issue on the retaliation claim. The law of the case does not preclude summary judgment under these circumstances. *See United States v. Becerra*, 155 F.3d 740, 752–53 (5th Cir.1998) (the law of the case doctrine precludes reexamination of an issue of law or fact by the district court on remand *unless* the evidence on retrial is substantially different, controlling authority has since made a contrary decision on applicable law, or the decision was clearly erroneous).

Summary judgment is appropriate on Izen's retaliatory prosecution claim.

### C. *Qualified Immunity*

Determination of qualified immunity requires a two-step inquiry. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The Court must first determine whether plaintiff's allegations, if true, establish a constitutional violation. *Roe v. Texas Dept. of Protective & Regulatory Services*, 299 F.3d 395, 401 (5th Cir. 2002) (citing *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)); *Keenan v. Tejeda*, 290 F.3d 252, 261 (5th Cir.2002). The next question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151; *see also Roe*, 299 F.3d at 401 (only if the Court decides that the defendants engaged in constitutionally impermissible conduct must it proceed to the second step, which is to determine whether defendant's actions "violated clearly established statutory or constitutional rights of which a reasonable person would have known.").

Having determined that Izen cannot prove his malicious prosecution or retaliatory prosecution claims, the Court concludes that Izen cannot prove a constitutional violation sufficient to overcome Defendants' qualified immunity.[27] However, even if Izen could show a constitutional violation, Defendants are entitled to qualified immunity under the second prong of the inquiry. The evidence and information against Izen was more than sufficient to make Catalina's and Climer's actions objectively reasonable.[28]

---

**27.** Defendants also argue, based on *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), that there was no clearly established constitutional right to be free from malicious prosecution at the time of Izen's prosecution. It is not necessary to make such a ruling in this case because even if such a right existed, it clearly was not violated.

**28.** Scattered throughout Plaintiffs' briefing are requests for additional discovery on the issue of Defendants' "good faith." *See, e.g.,* Plaintiffs' Response to Motion to Dismiss or for Summary Judgment After Remand and Supplement and Defendants' Position on Dis-

covery After Remand [Doc. # 85], at 14. Izen claims that additional discovery is necessary as to the motive and intent behind Defendants' investigation and prosecution of Izen. Much information has already been disclosed to Izen. *See* Defendants' Position on Discovery After Remand [Doc. # 78]. Izen has in his possession all documents from his criminal case, including tapes and transcripts of his conversations with Climer. Izen also has been provided numerous IRS documents relating to the decision to investigate and prosecute him. *Id.* Izen has stated that he needs the identity of other IRS officials who have circulated the information provided by Easton, and the deposition of Easton and his

Izen has failed to raise a genuine fact issue that it should have been clear to Defendants that investigation and prosecution of Izen for aiding and abetting money laundering and conspiracy to launder money would violate his constitutional rights. *See Saucier*, 533 U.S. at 202, 121 S.Ct. 2151. Thus, Defendants Catalina and Climer are entitled to qualified immunity from Izen's § 1983 claims.

### D. Tort Claims Against the United States

Izen asserts a cause of action against the United States under the Federal Tort Claims Act ("FTCA") based on the state torts of malicious prosecution, false arrest, intentional infliction of emotional distress and negligence. The FTCA acts as a waiver of the United States' sovereign immunity for certain torts committed by its employees. *See* 28 U.S.C. §§ 1346(b), 2674. The FTCA provides that "[t]he United States shall be liable ... in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

An individual may bring a claim against the United States pursuant to the FTCA only to the extent he has presented the claim to the appropriate federal agency and his claim has been finally denied by the agency in writing, or until six months have passed without agency disposition. 28 U.S.C. § 2675. A litigant cannot base

any part of a tort action against the United States on claims not presented to the appropriate administrative agency. *Rise v. United States*, 630 F.2d 1068, 1071 (5th Cir.1980). "[A] Federal Tort Claims Act suit can be based on particular facts and theories of liability only when those facts and theories can be considered part of the plaintiff's administrative claim." *Id.* Facts and theories of liability can be considered part of a plaintiff's administrative claim "as long as a claim brings to the Government's attention facts sufficient to enable it thoroughly to investigate its potential liability and to conduct settlement negotiations with the claimant." *Id.*

In this case, Izen's administrative claim was based on his allegations that during the sting operation, Defendants attempted to utilize a Treasury disbarment proceeding to gather information and statements from Izen in violation of his Fifth Amendment right against self-incrimination, and that Catalina lied to the grand jury in May 1995 by testifying that Izen had not paid taxes for 1986, 1987, or 1988.[29] The administrative claim asserts that such actions violated Izen's constitutional rights, violated the Internal Revenue Code, subjected him to unlawful criminal investigation and prosecution, and caused him to suffer mental anguish. Izen sought $1,000,000 in damages for himself and $100,000 for loss of consortium damages for his wife. Plaintiffs' current FTCA

---

attorney. Izen's discovery requests are futile and are rejected. Contrary to his characterization, the prosecution ultimately was not based solely, if at all, on information provided by Easton. The Court has found that sufficient information was available aside from the initial information from Easton to establish that probable cause existed.

Izen also requests disclosure of grand jury materials. The Court has previously denied this request. Order issued September 9, 2002 [Doc. # 105]. On reconsideration here, the Court again finds that Izen has shown no compelling need for disclosure of grand jury

materials. As the Court has made clear, the decision to dismiss Plaintiffs' claims is not dependent on a finding about Catalina's testimony to the grand jury as to whether Izen had paid his taxes. Further discovery on this point is immaterial.

**29.** The administrative claim actually says "taxable years 1996, 1997, and 1998," but the Court will assume for these purposes that the misidentification of years is merely a typographical error of which all parties were aware during the administrative process. .

claims go far beyond the scope of the administrative claim set forth above.[30] Thus, Izen's (and his wife's) FTCA claims fail for lack of exhaustion. Plaintiffs' FTCA claims also fail on their merits, as discussed below.

■ The United States is liable only to the extent its employees would be liable under state law. Because Defendants have established that probable cause existed for prosecution of Izen, Izen's FTCA claim based on malicious prosecution and false arrest [31] fail, and will be dismissed.[32]

■ Izen also seeks to assert an intentional infliction of emotional distress ("IIED") claim under Texas law.[33] A plaintiff must show for an IIED claim: (1) intentional or reckless acts by defendant; (2) that are extreme and outrageous; (3) causing the plaintiff emotional distress; (4) which emotional distress is severe. *Brewerton v. Dalrymple*, 997 S.W.2d 212, 215 (Tex.1999) (citing *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993)). Extreme and outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman*, 855 S.W.2d at 621. This Court's finding that probable cause

---

30. Prime allegations underlying Plaintiffs' FTCA claim in this Court are that Defendants relied on allegedly false information supplied by the informant Easton and Defendants failed to investigate what Izen characterizes as "exculpatory" evidence. These allegations were not included in the administrative claim. In addition to asserting materially new and different factual allegations, Plaintiffs' current claim seeks actual damages of $4,000,000 and mental anguish damages for Karen Izen of $1,000,000.

31. Probable cause in a malicious prosecution claim under Texas law closely follows the federal standard and is defined as "the existence of such facts and circumstances as would excite belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor [complainant] that the person charged was guilty of the crime for which he was prosecuted." *Brown v. Nationsbank Corp.*, 188 F.3d 579, 586 (5th Cir.1999) (citing *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex.1997)). False arrest claims under Texas law require proof of a willful detention of the person, against the person's consent, without authority of law. *Garza v. United States*, 881 F.Supp. 1103, 1107 (S.D.Tex. 1995); *Villegas v. Griffin Indus.*, 975 S.W.2d 745, 754 (Tex.App.Corpus Christi 1998, pet. denied). The existence of probable cause provides authority to arrest.

32. Izen contends that the United States' failure to certify that Catalina and Climer were acting within the scope of their employment somehow is fatally defective to the United States' motion. This contention lacks merit. Certification is required in order to substitute the United States as the sole defendant in a tort claim based on acts by government employees committed in the course and scope of their employment. The United States is the named defendant to Plaintiffs' FTCA cause of action, and is not arguing in its defense that Catalina and Climer were acting outside the scope of their employment. The cases cited by Plaintiffs are wholly inapposite. *See Garcia v. United States*, 62 F.3d 126, 127 (5th Cir.1995) (holding that certification of scope of employment under the Westfall Act is subject to judicial review and that whether a particular federal employee was or was not acting within the scope of his employment is controlled by state law where the conduct occurred); *Mitchell v. Carlson*, 896 F.2d 128, 131 (5th Cir.1990) (the court is barred by § 1447(d) from reviewing on appeal or otherwise orders of remand for lack of jurisdiction in a Westfall Act case).

33. In an Order issued September 9, 2002 [Doc. # 105], the Court denied Plaintiffs' Motion for Leave to File Second Amended Complaint [Doc. # 99]. Plaintiffs' proposed Second Amended Complaint renamed the FTCA cause of action "State Tort Claims—Malicious Prosecution and False Arrest." It appears, therefore, that Plaintiffs intends to drop their FTCA claims based on negligence and intentional infliction of emotional distress. However, because the Court denied leave to amend, it addresses those claims here.

existed for the prosecution negates the element of "extreme and outrageous conduct."[34]

Izen and his wife also appear to assert a negligence claim, although Plaintiffs' submissions fail to disclose exactly what actions by Defendants Plaintiffs contend were negligent. The Court construes Plaintiffs' negligence claim to be that Defendants were negligent in allegedly failing to investigate "exculpatory" evidence as to Izen. Plaintiff cannot overcome the defects in his claim for malicious prosecution or false arrest simply by casting the Defendants' actions as negligent. *Cf. McNeily v. United States*, 6 F.3d 343, 347 (5th Cir.1993) ("a plaintiff cannot avoid the reach of § 2680(h) by framing his complaint in terms of negligent failure to prevent the excepted harm.")

Moreover, Plaintiffs' negligence claim is barred by the discretionary function exception to the FTCA. The discretionary function exception is found in 28 U.S.C. § 2680(a), which provides that the FTCA does not act as a waiver of sovereign immunity for any claim based upon "the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved can be abused." In *United States v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), the Supreme Court outlined a two-step test for applying the "discretionary function" exception. First, the exception covers only acts involving "an element of judgment of choice," and not acts involving compliance with federal statutes, regulations, or policy. *Id.* at 322, 111 S.Ct. 1267. Second, the exception applies only if the conduct is based on considerations of public policy. *Id.* at 323, 111 S.Ct. 1267. Clearly, Defendants' decisions as to how to conduct the IRS criminal investigation fit both requirements of *Gaubert*.[35]

Plaintiffs cannot meet their burden of proof to create genuine issues of material fact on each required element of their FTCA claim, and thus all Plaintiffs' theories under that statute will be dismissed.

## IV. CONCLUSION AND ORDER

Plaintiffs have failed to create a genuine issue of material fact as to the lack of probable cause for Defendants prosecution of Izen and thus cannot prove malicious prosecution. Plaintiffs also have not raised a genuine fact issue that Defendants' prosecution or investigation of Izen for aiding and abetting or conspiring to launder money violated Izen's First Amendments rights and constituted retaliatory prosecution. Thus, Defendants are entitled to summary judgment on Plaintiffs' malicious prosecution and retaliatory prosecution claims. The Court further finds that Defendants have qualified immunity from Plaintiffs' malicious prosecution

---

**34.** Plaintiffs have also presented no evidence that any emotional distress they suffered was severe.

**35.** Plaintiffs argue that the qualified immunity of law enforcement officers does not shield the United States from liability, citing *Garza v. United States*, 881 F.Supp. 1103, 1106 (S.D.Tex.1995). However, unlike the *Garza* case, the United States is not relying on immunity here, but on the discretionary function exception to liability. *See id.* at 1106 n. 3 ("The United States does not contend that the discretionary function exception [under § 2680(a) ] would apply under the facts of this case."). The case at bar is also distinct from *Sutton v. United States*, 819 F.2d 1289, 1293–94 (5th Cir.1987), in which the Fifth Circuit held that the United States could not rely on the discretionary function exception to trump the provision of § 2680(a) waiving sovereign immunity for the intentional tort of malicious prosecution in the case of law enforcement officers. Here, the discretionary function exception shields the United States from liability on the Plaintiffs' negligence claim.

and retaliatory prosecution claims. In addition, Plaintiffs' have not created a genuine issue of material fact as to the United States' liability under the Federal Tort Claims Act. It is therefore,

**ORDERED** that Defendants' Motion to Dismiss or For Summary Judgment After Remand [Doc. # 77] and United States' Motion to Dismiss or for Summary Judgment After Remand [Doc. # 93] are **GRANTED**. It is further

**ORDERED** that all Plaintiffs' claims are **DISMISSED WITH PREJUDICE.**

The Court will issue a separate final judgment.